16 F.3d 1363
 28 Fed.R.Serv.3d 171
 Harry J. GERARDI; Coolidge J. Marqueen; Estate of Coolidge
J. Marqueen
v.
Leonard A. PELULLO; David Hellhake; David Niefield; Raul
Corona; Moshe Milstein; Alan Weisberger;
Compton Press, Inc.; Equity Finance Group, Inc.
COMPTON PRESS INC. EMPLOYEES' PROFIT SHARING RETIREMENT
PLAN; Compton Press, Inc. Employees' Thrift Plan, by and
through its Trustees and Administrators; Mark P. Correia;
Wayne Decker; Frank Genthe, Ronald Lockwood
v.
GRANADA INVESTMENTS, INC.; Andrew N. Heine; Away to
Travel-South, Inc.; Away to Travel-South Real Estate, Inc.;
Away to Travel-South (Georgia), Inc.; Murray Schwartz;
Fred A. Schwartz; Granada Investments, L.P.
GRANADA INVESTMENTS, INC.; Andrew N. Heine, Third-Party Plaintiffs,
v.
Leonard A. PELULLO; Peter F. Pelullo; Equity Finance
Group, Inc.; Fairview Financial Corporation; Global
Financial Corporation; John Doe Trusts; George Hellhake;
G.H. Enterprises, Inc.; Coolidge J. Marqueen; Estate of
Harry J. Gerardi; David G. Hellhake; Raul Corona,
Third-Party Defendants,
Granada Investments, Inc., Andrew N. Heine, and Granada
Investments, L.P., Appellants.
 No. 93-5217.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 14, 1993.
Decided Feb. 3, 1994.
 
 Kenneth M. Van Deventer, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for appellees Estates of Harry J. Gerardi and Coolidge J. Marqueen.
 Michael L. Rich (argued), Mary A. Powers, Cathleen M. DeMarco, Dillon, Bitar & Luther, Morristown, NJ, attorneys for appellees Trustees and Administrators of the Compton Press, Inc. Employees' Profit Sharing Plan and Compton Press, Inc. Employees' Thrift Plan.
 Fredric R. Cohen (argued), Katz, Ettin, Levine & Kurzweil, Cherry Hill, NJ, attorney for appellants.
 Before: SLOVITER, Chief Judge, and GREENBERG and ROTH, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 This appeal arises from loans of $1,150,000 from the appellees, two pension plans established for the employees of Compton Press, Inc., to appellants, Granada Investments, Inc. (Granada Inc.), a Delaware corporation, and Andrew N. Heine, its president. The loans were evidenced by three notes, executed after the actual transfer of funds, providing for repayment of the principal with interest and costs. Granada Inc. and Heine did not repay the Plans which thus brought this action to recover the funds. On the Plans' motion, the district court entered partial summary judgments on November 24, 1992, in their favor for a total of $1,150,000 on a theory of unjust enrichment, $400,000 against Heine, and $750,000 against Granada Inc.[1] In addition, on that day by a separate order, the court entered a preliminary injunction against Granada Inc. and Heine, as well as against a third appellant, Granada Investments, L.P. (Granada Partnership), enjoining the three appellants from disposing of $1,500,000 obtained by Granada Inc. in settlement of other litigation we describe below. Granada Partnership is a limited partnership of which Granada Inc. is the general partner.
 
 
 2
 On the appellants' motion the district court certified the partial summary judgments as final under Fed.R.Civ.P. 54(b) in an order entered March 24, 1993. However, because the Plans' action seeks repayment based on the notes themselves, their claims remain open in part in the district court. Moreover, it is undisputed that a recovery on the notes would result in judgments including the $1,150,000 already awarded, though it could include additional recoveries for attorneys' fees, interest, and costs.
 
 
 3
 Granada Inc., Granada Partnership, and Heine appeal from the orders of November 24, 1992, and March 24, 1993. Because we conclude that the district court abused its discretion in making the certification under Rule 54(b), we will dismiss the appeal from the partial summary judgments and will consider the issues raised with respect to those judgments only incidentally to the appeal from the preliminary injunction. We will affirm the district court order granting the preliminary injunction.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 This case arises from activities of Leonard Pelullo and various of his associates. Prior to March 1989, Pelullo interested Heine, a prominent attorney, in making a tender offer to acquire a controlling interest in DWG Corporation, a diversified Miami-based public company for which Pelullo had served as a consultant. With Heine providing investment and legal advice, Pelullo formed Granada Partnership for use in acquiring DWG.
 
 
 5
 In the spring of 1989, while the takeover bid for DWG was pending, and after Granada Inc. had started litigation against DWG regarding that bid, Pelullo obtained control of Compton Press, Inc., a New Jersey corporation,[2] by acquiring Equity Finance Group, Inc., Compton's owner. Compton at that time maintained the appellee Plans, Compton Press, Inc. Employees' Profit Sharing Retirement Plan and Compton Press, Inc. Employees' Thrift Plan. The Plans are regulated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq.
 
 
 6
 After Pelullo took control of Compton, its board of directors at a meeting on May 19, 1989, appointed Pelullo and his associate, David Hellhake, as a new committee for the Plans. In addition, the board appointed Hellhake and another Pelullo associate, Raul Corona, Plan trustees and administrators. In those capacities Hellhake and Corona joined the previous trustees and administrators, Harry Gerardi and Coolidge Marqueen, who stayed in their positions until removed in September 1989.[3]
 
 
 7
 The events giving rise to this litigation occurred shortly after Pelullo gained control of Compton. In early June 1989, the Plans transferred $750,000 to Granada Inc.'s account at the Imperial Bank in Miami, and in July 1989, the Plans transferred $400,000 to Heine's account at the Marine Midland Bank in New York. Though the legal character of these transfers initially was not documented, the transfers some months later retroactively were made into formal loans. This structuring was accomplished when Granada Inc. delivered three notes for $600,000, $150,000, and $400,000, thus totaling $1,150,000, to the Plans, all bearing the purported signature of Heine as Granada Inc.'s president. Though the Plans supplied an expert's report supporting their summary judgment motion which asserted that Heine signed all three notes, he challenges the authenticity of his signature on the notes for $600,000 and $150,000. Heine does acknowledge signing the $400,000 note, but he asserts that the note is nevertheless invalid as it was delivered subject to a condition which never was met.
 
 
 8
 In response to these transfers of funds, litigation commenced. On September 26, 1989, Gerardi and Marqueen as beneficiaries of the Plans filed a complaint in the district court against Pelullo, Hellhake, Corona, other Pelullo associates, Compton Press, Inc., and Equity Finance Group, Inc., seeking removal of the trustees and administrators of the Plans, a preliminary and permanent injunction appointing a neutral trustee and administrator, compensatory damages, and attorneys' fees. On March 27, 1991, the Plans filed the action presently before us against Heine, Granada Inc., and Granada Partnership seeking return of the $1,150,000 in funds transferred to Granada Inc. and Heine.[4] In response to the Plans' action, Granada Inc., Granada Partnership, and Heine, rather than contending that the challenged transactions were pristine, argued that Pelullo had victimized them as well as the Plans.
 
 
 9
 On February 27, 1992, the parties consented to an order imposing temporary restraints on Granada Inc., Granada Partnership, and Heine which prohibited them from dissipating $1,500,000 of the proceeds obtained from DWG as a settlement of a suit against that corporation arising from the takeover bid.[5] The order provided, however, that either side could seek a hearing on whether the restraints should be continued.
 
 
 10
 Subsequently, the Plans moved for summary judgment and sought a preliminary injunction to continue the temporary restraints. On November 24, 1992, the district court entered an opinion and orders granting the Plans partial summary judgments against Granada Inc. for $750,000 and against Heine for $400,000 and granting the Plans' motion for a preliminary injunction against them as well as against Granada Partnership.
 
 
 11
 In its opinion, the district court first denied the Plans' motion for summary judgment to the extent they sought recovery directly on the notes, as the court determined that there were genuine issues of material fact concerning liability in dispute.[6] In particular the district court based its decision on the $600,000 and $150,000 notes on Heine's testimony that he did not recall executing the notes, that he did recall specifically advising Pelullo that he declined to execute them, and he did not believe that the disputed signatures were his. The court further predicated its decision on the opinion of the appellants' expert that Heine's handwriting on the notes could not be identified with any degree of reasonable certainty.
 
 
 12
 While Heine acknowledged that he signed the $400,000 note, the district court nevertheless denied summary judgment on that note on the grounds that there was a factual issue as to whether it was delivered for a special purpose or subject to a condition precedent.[7] The district court held that even though the parol evidence rule generally bars attempts to offer oral evidence to vary the terms of a fully integrated written contract, under N.J.Stat.Ann. Sec. 12A:3-306 (West 1962), "defenses based upon nonperformance of a condition precedent, or delivery for a special purpose, may be asserted against a party who is not a holder in due course."[8] Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc., No. 91-1256, at 10, 1992 WL 566329 (D.N.J. Oct. 20, 1992). Inasmuch as the Plans did not claim to be holders in due course, Heine's contention created an issue of material fact which required that summary judgment be denied.
 
 
 13
 The district court did, however, grant partial summary judgments to the Plans on the theory of unjust enrichment. With respect to the $750,000, the district court reasoned that the Plans received notes from Granada Inc. in return for the loan and expected to be repaid. The district court dismissed a defense which Heine raised that he lacked knowledge of and did not participate in the monetary transfers. The court further reasoned that Hellhake and Lynn, employees of Granada Inc., knew that Granada Inc. obtained the funds from the Plans and that their knowledge as agents of Granada Inc., should be attributed to it as their principal.
 
 
 14
 The district court held that Heine's actions did not support his defense that he innocently changed his position with respect to the $400,000 transfer. Heine had argued that although he utilized the funds from the Plans to retain financial services in conjunction with the DWG takeover attempt, he thought that Pelullo and his associates had paid the money to Granada Inc. to satisfy a debt Pelullo owed Granada Inc. which thus appropriately regarded the $400,000 as equity. Heine contended that the debt represented the consideration for DWG shares Granada Inc. transferred to Pelullo when he withdrew from the takeover attempt. Heine contended that he never knowingly would have used funds borrowed from the Plans for the purposes for which they actually were used. The district court held that these allegations could not establish a defense, inasmuch as Heine did not say he never would have spent the funds as he did, but merely indicated that he would not have used the Plans' money for such purposes.[9] Accordingly, he was obliged to repay the $400,000.
 
 
 15
 In addition to granting the partial summary judgments, the district court converted the temporary restraints in the February 25, 1992 consent order into a preliminary injunction. The court found that the necessary factors to justify injunctive relief had been met, viz., the Plans demonstrated that they had a reasonable probability of success on the merits and they would suffer irreparable injury without an injunction, an injunction would not harm the appellants, and it was in the public interest to issue the injunction to protect the Plans' financial integrity. In particular, the court found it very likely that the Plans would recover judgments on the notes for $1,150,000, plus interest, attorneys' fees and costs, and that unless the fund derived from DWG was protected from dissipation there might not be money available to satisfy the judgments.
 
 
 16
 On March 24, 1993, the district court denied the appellants' motion for reargument and reconsideration but granted their motion for a Rule 54(b) certification of the partial summary judgments as final pursuant to 28 U.S.C. Sec. 1291. The appellants appeal to this court from the partial summary judgments, from the preliminary injunction, and from the order denying reconsideration.
 
 II. JURISDICTION
 
 17
 Preliminarily, we address our jurisdiction. All the parties assert that we have jurisdiction over the appeals from the partial summary judgments[10] pursuant to 28 U.S.C. Sec. 1291, as the district court certified the judgments as final under Rule 54(b).[11] Nevertheless, when we reviewed the appeal prior to argument we questioned whether the certification was proper for Rule 54(b) cannot be invoked to certify a partial summary judgment as final when a plaintiff seeks to recover for the same loss on different theories and the district court has resolved its claim on less than all the theories advanced. See Allegheny County Sanitary Auth. v. United States Environmental Protection Agency, 732 F.2d 1167, 1172 (3d Cir.1984). We reiterate that in this case, the district court granted the Plans' motion for summary judgments based on the theory of unjust enrichment, but denied their motion to the extent they predicated it directly on the notes. Thus, the potential application of the limitation on Rule 54(b) explicated in Allegheny is obvious. Accordingly, we directed the parties to brief the finality issue, notwithstanding their agreement that the certification was proper, for we consider the validity of a Rule 54(b) certification ourselves. American Motorists Ins. Co. v. Levolor Lorentzen, Inc., 879 F.2d 1165, 1169 (3d Cir.1989).
 
 
 18
 In making our jurisdictional analysis we recognize that though the "[d]isfavoring [of] piecemeal appeals is a longstanding policy of the federal courts ... Rule 54(b) ... was designed to remedy the harsh effects that sometimes result from a delayed appeal in litigation presenting multiple claims or multiple parties." Sussex Drug Prods. v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir.1990).[12] In reviewing the grant of the Rule 54(b) motion, we recognize that the district court's decision to certify necessarily was predicated on its affirmative answer to two questions, i.e., were the judgments final and were they ready for appeal. Thus, ordinarily we also first would determine whether the judgments the district court certified were actually final judgments, Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980) (citing Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)), and in this determination we would exercise plenary review. Sussex Drug Prods., 920 F.2d at 1153. Then, if we concluded that the judgments were final, we would consider whether the district court abused its discretion in determining that they were "ready for appeal ... tak[ing] into account judicial administrative interests as well as the equities involved." CurtissWright, 446 U.S. at 8, 100 S.Ct. at 1465; Sussex Drug Prods., 920 F.2d at 1153. In this case, however, though we will discuss the first question we will only answer the second.
 
 A.
 
 19
 With respect to finality we indicated in Sussex Drug Prods.:
 
 
 20
 Finality is defined by the requirements of 28 U.S.C. Sec. 1291, which are generally described as 'ending the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment.' Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 275, 108 S.Ct. 1133, 1136 [99 L.Ed.2d 296] (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633 [89 L.Ed. 911] (1945)). Rule 54(b) does not alter this definition, but allows a judgment to be entered if it has the requisite degree of finality as to an individual claim in a multiclaim action. The partial adjudication of a single claim is not appealable despite a rule 54(b) certification. Aetna Casualty & Surety Co. v. Giesow, 412 F.2d 468, 470 (2d Cir.1969). Consequently it is necessary to consider what constitutes a 'claim' within the meaning of Rule 54(b).
 
 
 21
 920 F.2d at 1153-54.
 
 
 22
 Courts have had difficulty in determining what constitutes a "claim," and have recognized that in this endeavor "uncertainty is the rule." Sussex Drug Prods., 920 F.2d at 1154. See also, e.g., Allegheny County Sanitary Auth., 732 F.2d at 1172-73; Tolson v. United States, 732 F.2d 998, 1002 (D.C.Cir.1984); Local P-171, Amalgamated Meat Cutters and Butcher Workmen v. Thompson Farms Co., 642 F.2d 1065, 1070 (7th Cir.1981). As leading commentators have observed, "[t]he line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure." 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2657, at 60-61 (2d ed. 1983). Moreover, there is no definitive test to determine whether more than one claim is before the court. Allegheny County Sanitary Auth., 732 F.2d at 1172.
 
 
 23
 However, the Supreme Court has "recognize[d] that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976). In addition, we have pointed out that "[a]lternative theories of recovery based on the same factual situation are but a single claim, not multiple ones." Sussex Drug Prods., 920 F.2d at 1154 (citing Allegheny County Sanitary Auth., 732 F.2d at 1172).
 
 
 24
 In this case, in granting the appellants' Rule 54(b) motion, the district court determined that the judgments were final based upon the following reasoning:
 
 
 25
 The order is a 'final judgment' as it is an ultimate disposition of an individual claim for relief, namely plaintiffs' unjust enrichment claim against Granada for $750,000 and against Heine for $400,000.
 
 
 26
 Plaintiffs' complaint against moving defendants consists of separate counts and legal theories requesting relief based on (a) unjust enrichment as a result of defendants' receipt of plaintiffs' funds; (b) execution of loan documentation; and (c) the declaration the defendant Heine is the de facto general partner of Granada Investments L.P., and therefore liable for its debts. Partial summary judgments were granted on the unjust enrichment claim. Certification is appropriate as more than one claim for relief is present between plaintiffs and defendants, other multiple parties are involved (remaining defendants, third party defendants and parties in the consolidated action bearing docket # 89-4069) and there is no just reason for delay.
 
 
 27
 The factors justifying certification and discussed herein are set forth in Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) and In Re National Smelting of New Jersey, Inc. Bondholders' Litigation, 695 F.Supp. 796 (1988).
 
 
 28
 The adjudicated unjust enrichment and agency issues are sufficiently distinct legally and factually, from the remaining claims to elevate them to the status of a separate cause of action subject to certification. The facts recited in the various counts of plaintiffs' complaint occurred on different dates, involved separate proofs and are pressed under different legal theories. In addition, the partial summary judgment claims are subject to separate execution, another test of a separate claim or cause of action.
 
 
 29
 Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc., No. 91-1256, at 3-4, 1992 WL 566329 (D.N.J. Mar. 23, 1993).
 
 
 30
 Notwithstanding the district court's opinion, we think that it is doubtful that the Plans have advanced separate claims rather than alternative theories for recovery on a single claim. In this regard we point out that the recoveries sought for unjust enrichment would be subsumed by recoveries on the notes. Thus, in a sense, the partial summary judgments have been entered on what we may characterize as lesser-included aspects within the greater recoveries still sought on the notes. This characterization could lead to a conclusion that the partial summary judgments are not final.
 
 
 31
 We acknowledge, however, that there is a reasonable argument that the recoveries sought for unjust enrichment and on the notes are for separate claims. First, the contrast between the circumstances of this case and those in Wetzel support the contention that the Plans have alleged separate claims. In Wetzel, the Supreme Court held that plaintiffs who asked for several different types of relief from allegedly discriminatory employee insurance benefits and maternity leave regulations nevertheless had set forth only a single claim--discrimination against women--based upon only a single legal theory as applied to only one set of facts. Wetzel, 424 U.S. at 743, 96 S.Ct. at 1206. Here, the unjust enrichment action and the action on the promissory notes arguably may be considered separate causes of action stating different claims.
 
 
 32
 Second, the two bases for recovery are somewhat distinct factually, as they do not stem in all respects from the same "core of operative facts." See Oyster v. Johns-Manville Corp., 568 F.Supp. 83 (E.D.Pa.1983) (only one "claim" presented in personal injury case, since establishing intent in remaining intentional misconduct count would require proof of same "core of operative facts" as negligence, breach of warranty, and strict liability counts already dismissed), appeal dismissed, 770 F.2d 1073 (3d Cir.1985), discussed in Sussex Drug Prods., 920 F.2d at 1154-55. The unjust enrichment allegations are based primarily on the transfer and receipt of funds in June and July of 1989, whereas the notes were executed later in that year. Thus, the two theories do not rest entirely on the same factual basis, although the district court in part based its decision on the unjust enrichment theory on the delivery of the notes to the Plans as the notes demonstrated that the Plans expected repayment. With respect to this point we observe that in some circumstances a judgment may be certified under Rule 54(b) even if it rests in part on some facts involved in unadjudicated claims. See Sears, Roebuck & Co. v. Mackey, 351 U.S. at 437 n. 9, 76 S.Ct. at 900 n. 9.
 
 
 33
 Third, arguably the unjust enrichment and note theories create distinct claims because to a degree "separate" recovery is possible on each. See Local P-171, etc., 642 F.2d at 1070-71. The action on the notes, if successful, would result in a greater recovery than that predicated on unjust enrichment, because the notes provide for the payment of attorneys' fees and costs, as well as for interest at a rate higher than on the unjust enrichment judgment. Therefore, while the action on the notes in part seeks recovery of the $1,150,000 already awarded on the basis of unjust enrichment, overall the recovery on the notes could be approximately $1,700,000 at present, an amount which exceeds the payments necessary to satisfy the partial summary judgments with interest. Accordingly, this case is distinguishable from Allegheny County because there the injunctive relief sought by plaintiffs would have been the same no matter which count or counts plaintiff proved. 732 F.2d at 1172-73.
 
 
 34
 Thus, although we do not decide whether the district court could recognize the partial summary judgments as final, we do conclude that its determination in that respect was not unreasonable.[13] We are relieved from making what ordinarily would be our initial determination in a review of a Rule 54(b) certification order, because we are satisfied that even if the judgments were final, the district court abused its discretion when it concluded that they were ready for appeal.
 
 B.
 
 35
 In Curtiss-Wright Corp. v. General Electric Co., the Supreme Court said "judicial administrative interests" should be considered by a district court in determining whether a matter is ready for appeal. 446 U.S. at 8, 100 S.Ct. at 1465. As our opinion in Sussex Drug Prods. illustrates, such interests may not be served if "[t]he possibility exists ... that the need to review the issues currently appealed may be mooted by future developments in the district court." 920 F.2d at 1156. In Sussex Drug Prods., we held that the district court abused its discretion in certifying a partial summary judgment because the use of an alternative theory of liability presented in a remaining count could moot the need to review the issues then presented for appeal.[14] We took this position because the remaining damages count, while seeking punitive damages, also sought recovery for the same compensatory damages already awarded under the first four counts. Therefore, the entire recovery the plaintiff originally sought still could have been awarded under the remaining count. We also stated that the interlocking factual relationship among the various counts made it likely that an appellant on a subsequent appeal again would seek review of the issues presented in the first appeal. Finally, we added that the separation of the remaining count was an "inappropriate splintering of a judicial unit," inasmuch as the court would not have split the counts this way if the case had been set for a jury trial. 920 F.2d at 1156.
 
 
 36
 In this case, the district court addressed the issue of the interests in judicial administration in the following fashion:
 
 
 37
 Considerations of judicial economy and administration also require a certification as in the event after trial the appellate court reverses the present rulings, this case would have to be tried twice. Further, it is not anticipated that the appeal would be rendered moot by future developments at the trial level. Last, under an existing scheduling order, this case will not be tried before May, 1993 and therefore the appeal will not delay any trial.
 
 
 38
 Defendants have also raised certain legal issues likely to recur, not dependent for resolution on disputed facts, including
 
 
 39
 (i) whether they may counterclaim against the plaintiff pension plans for contributory negligence, as distinct from a claim of breach of fiduciary duty for which defendants lack standing to sue;
 
 
 40
 (ii) whether Granada Investments, Inc. is liable for the acts of its agents in transferring plaintiffs' funds, despite defendants' argument that these agents were prohibited from borrowing or taking any funds from plaintiffs without an ERISA compliance letter; and
 
 
 41
 (iii) whether Mr. Heine's alleged change of position in spending plaintiffs' funds, constitutes a defense to plaintiffs' unjust enrichment claim.
 
 
 42
 Compton Press, Inc. Employee's Profit Sharing Retirement Plan v. Granada Investments, Inc., No. 91-1256, at 4-5, 1992 WL 566329.
 
 
 43
 We view the situation differently, however, and believe that proper consideration of judicial administrative interests demonstrates that the district court inappropriately exercised its discretion in determining that the judgments were ready for appeal. First, it is not disputed that the Plans' action on the notes in part seeks the damages already awarded by the partial summary judgments. In other words, the entire recovery sought by the Plans could be awarded in the aspects of the action which remain before the trial court. That outcome might moot the need to review substantive issues which Granada, Inc. and Heine raise on this appeal, namely, whether they may counterclaim against the Plans for contributory negligence, whether Granada Inc. is liable for the acts of its agents in transferring the Plans' funds, and whether the appellants' alleged change of position constitutes a defense to the unjust enrichment claim.
 
 
 44
 Furthermore, the potential interlock between the factual circumstances underlying the recoveries sought on the notes and for unjust enrichment suggests that it was not in the interests of sound judicial administration for the district court to certify the partial summary judgments as final. Even though the district court decided the matter on a motion for summary judgment, we cannot say that the development of a full factual record at a trial on the action on the notes might not be of assistance to us in deciding the issues raised on this appeal. Finally, considering a factor we noted in Sussex Drug Prods., if this case had been tried in its entirety, it seems likely that the court would not have severed the counts predicated on unjust enrichment from those on the notes, as evidence relating to the actions on the notes would have been germane to the unjust enrichment issues. See Sussex Drug Products, 920 F.2d at 1156.
 
 
 45
 Overall we are convinced that the district court abused its discretion in determining that the partial summary judgments were ready for appeal. In this regard we point out that a district court should be conservative in invoking Rule 54(b) to certify a judgment as final because if an aggrieved party appeals following the certification, the district court effectively will be electing to control the docket of a court of appeals.[15] Furthermore, a court should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts underlying the claim resulting in that judgment may be intertwined with the remaining issues.[16] In view of our conclusion that the district court abused its discretion under Rule 54(b), we will consider the partial summary judgments only incidentally to the appeal of the preliminary injunction without determining whether the district court properly granted the judgments. See Kershner v. Mazurkiewicz, 670 F.2d 440, 445-50 (3d Cir.1982). Accordingly, we will dismiss the appeal from the partial summary judgments and from the order denying reconsideration of those judgments.
 
 III. THE PRELIMINARY INJUNCTION
 
 46
 Our dismissal of the appeal from the order granting the partial summary judgments in no way impairs our jurisdiction to consider the appeal from the preliminary injunction, which we thus consider on the merits. 28 U.S.C. Sec. 1292(a)(1). We will affirm a district court's grant of a preliminary injunction unless it has abused its discretion, committed an obvious error in applying the law, or made a serious mistake in considering the proof. Kreimer v. Bureau of Police, 958 F.2d 1242, 1250 n. 9 (3d Cir.1992); Alessi v. Pennsylvania Dep't of Public Welfare, 893 F.2d 1444, 1447 (3d Cir.1990); Premier Dental Prods. Co. v. Darby Dental Supply Co, 794 F.2d 850, 852 (3d Cir.1986), cert. denied, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). In our review we recognize that in deciding whether to issue a preliminary injunction, a district court:
 
 
 47
 must carefully weigh four factors:
 
 
 48
 (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.
 
 
 49
 SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir.1985); see also, e.g., S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir.1992).
 
 
 50
 We are satisfied that the district court's decision granting the partial summary judgments in itself clearly demonstrates the probability that the Plans will be successful on the merits, at least on a theory of unjust enrichment. Indeed, the Plans already have been successful on that theory in the district court and thus to that extent they merely need defend their judgments. Moreover, we believe that the district court correctly demonstrated that the Plans were likely to be successful in their action on the notes themselves. As its opinion recounts, Heine's testimony concerning the authenticity of his signature on the disputed notes was "at best, evasive and ambiguous." Accordingly, when the court weighed that testimony against the Plans' expert's testimony that Heine's signatures were genuine, it found a substantial likelihood that the Plans will prevail on its action on the two notes totalling $750,000. Furthermore, in light of Heine's surprising testimony regarding the oral condition precedent to the delivery of the $400,000 note, the court fairly took a similar view concerning that instrument as well.[17] Accordingly, we believe that the district court properly determined that the Plans had shown a reasonable probability of success on the merits.
 
 
 51
 Furthermore, the Plans demonstrated that they are likely to suffer irreparable injury unless the court protects the $1,500,000 fund from dissipation. In Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 205-06 (3d Cir.1990), we indicated that there is ample authority for the proposition "that the unsatisfiability of a money judgment can constitute irreparable injury" for the purposes of granting a preliminary injunction. In its opinion, the district court ruled that absent an injunction the judgment probably would go unsatisfied in light of Granada Inc.'s insubstantial existence. Based on the district court's reasoning, which we find persuasive, we find that the Hoxworth requirements were met.[18] Here, as in Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940), which we analyzed in Hoxworth, "the injunction is reasonably necessary to preserve the status quo, and thus to ensure the satisfaction of a potential future judgment ordering the transfer of money from defendant[s] to plaintiffs." Hoxworth, 903 F.2d at 196 (reviewing Deckert ).
 
 
 52
 In addition, we agree with the district court that a substantial "public interest is served by protecting the fiscal integrity of ERISA benefit plans." In this regard we merely need refer to our recent opinion in Coar v. Kazimir, 990 F.2d 1413 (3d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993), in which, notwithstanding the anti-alienation provision of ERISA, we permitted a pension fund to set off its judgment against a trustee against his pension benefits. In reaching that result we emphasized that it was necessary to protect the assets of the fund in the interest of plan beneficiaries. Id. at 1423-24. Finally, we are satisfied that the appellants have not proffered significant evidence regarding any substantial harm they might suffer from the preliminary injunction.
 
 
 53
 Therefore, contrary to the appellants' assertions, see Brief at 43, this case is not a "run-of-the-mill" damages case in which a preliminary injunction would be inappropriate. Rather, the Plans have established that the requirements necessary for obtaining a preliminary injunction are present.
 
 IV. CONCLUSION
 
 54
 Based on the aforesaid analysis, we will affirm the order of November 24, 1992, granting the preliminary injunction against the appellants, and we will affirm the order of March 24, 1993, denying the motion for reconsideration of that order. Furthermore, we will dismiss the appeal from the order of November 24, 1992, for the partial summary judgments and from the order of March 24, 1993, denying reconsideration of that order.
 
 
 
 [1]
 A magistrate judge conducted the proceedings with the consent of the parties pursuant to 28 U.S.C. Sec. 636(c)(1). Thus, in the opinion, our references to the district court are to the magistrate judge
 
 
 [2]
 Compton Press, Inc. is now defunct
 
 
 [3]
 Several of these Pelullo associates also were involved in the management of Granada Inc. As of June 1989, Bonnie Lynn was a vice president, secretary and a director of Granada Inc. and David Hellhake was a vice president, assistant secretary and a director. Lynn and Hellhake were the only persons authorized to sign checks on its accounts at the Imperial Bank in Miami
 
 
 [4]
 The district court had diversity jurisdiction in the Plans' action. The companion case brought by Gerardi and Marqueen against Pelullo and his associates, Gerardi v. Pelullo, has been consolidated with this case, along with the appellants' counterclaim against the Plans and their third-party complaint against the Plans' trustees. Motions in the related action have been stayed by the district court pending resolution of this appeal. Granada Partnership was not an original party in the Plans' action but was added in an amended complaint
 
 
 [5]
 While the injunction recites that the figure was $1,500,000, the parties are in agreement that $1,450,000 was received. As a matter of convenience, we will use the former number
 
 
 [6]
 The Plans contended in the district court and contend on appeal that the transfers from the Plans to Granada Inc. and Heine were evidenced by (1) a promissory note, dated "1989," executed by Heine as president of Granada Inc. in the amount of $600,000; (2) a promissory note, dated "1989," executed by Heine as president of Granada Inc. in the amount of $150,000, and (3) a promissory note, dated September 29, 1989, executed by Heine as chairman of Granada Inc. in the amount of $400,000. Each note provides that it bears interest at four percent above the prime rate, that it matures in 1990, and that Granada Inc. will reimburse the Plans for all costs and expenses of collection, including reasonable attorneys' fees. The Plans further contend that Granada Inc.'s obligation to them was secured by (1) Heine's guarantee, contained in a letter agreement dated October 19, 1989, and (2) a Loan and Security Agreement between Granada Inc. and the Plans, dated October 19, 1989, which purports to grant a first security interest to the Plans in one percent of net profits received by Granada Inc. pursuant to its contractual entitlements from the then proposed merger between Granada Inc.'s wholly-owned subsidiary, Granada Acquisition Corporation, Inc., and DWG Corporation
 
 
 [7]
 The appellants had contended that Heine signed the $400,000 note subject to a condition precedent that required Pelullo to obtain an opinion letter from an attorney advising that the loan from the Plans to Granada Inc. would be proper under ERISA. In appellants' view, because no such opinion was obtained, the note is unenforceable
 
 
 [8]
 While the transactions in this case potentially could involve the law of various states, insofar as we can ascertain there is no suggestion that the New Jersey parol evidence rule in its version of the Uniform Commercial Code could not on a choice of law basis be applicable here
 
 
 [9]
 The district court rejected the appellants' affirmative defenses. First, the court ruled that the appellants had no claim against the Plans based on the trustees' negligence or misconduct in entering into the transactions. The court reasoned that such a claim would be for breach of fiduciary duties under ERISA, and the trustees did not owe a duty of care to the appellants under ERISA. Second, the court determined that it need not consider the appellants' contention that they are entitled to a set-off of funds paid to the Plans pursuant to a settlement reached with Pelullo, since claims for set-off or recoupment do not bar granting of summary judgment. The district court also rejected the appellants' procedural contention that they needed additional discovery to defend against the motion for summary judgment
 
 
 [10]
 The partial summary judgments were not granted against Granada Partnership and thus we regard it an appellant only as to the injunction
 
 
 [11]
 Rule 54(b) provides in pertinent part:
 When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 [12]
 It also was designed to facilitate execution in an appropriate case. See footnote 13, infra. In fact, the Plans support the contention that the partial summary judgments are final for that reason
 
 
 [13]
 The district court cited as support for its conclusion that the judgments were final its belief that partial summary judgments are subject to separate execution. We believe that the court implied by this statement that execution could issue prior to entry of a final judgment as to all issues and parties. However, the problem with this reasoning is that a judgment that is not otherwise final, i.e., usually meaning final as to all issues and parties, is not subject to execution until the certification under Rule 54(b) is entered. See Redding & Co. v. Russwine Constr. Corp., 417 F.2d 721, 727 (D.C.Cir.1969); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2661 at 128-29 (1983). Therefore, it is circular to argue that certification must be allowed because there can be execution
 
 
 [14]
 Aside from the problem presented by the Plans' assertion of alternative theories of liability, a Rule 54(b) certification would have been required for the appeal from the partial summary judgments because counterclaims and third-party complaints are outstanding. See, e.g., Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184 (3d Cir.1983). Of course, these open claims would not be germane to the finality determination
 
 
 [15]
 Rule 54(b) differs significantly from 28 U.S.C. Sec. 1292(b) because under that statutory section a court of appeals has discretion in determining whether to permit an interlocutory appeal certified by the district court. Thus, although experience shows that district courts properly have not been indiscriminate in certifying questions of law under 28 U.S.C. Sec. 1292(b), they should be, if anything, even more circumspect in certifying judgments as final under Rule 54(b) in cases in which the certification is sought so that a party may appeal immediately
 
 
 [16]
 A Rule 54(b) certification is more appropriate when a party joins completely unrelated claims as permitted by Fed.R.Civ.P. 18(a), and recovers a judgment on fewer than all the claims. In that circumstance the court might regard it appropriate to make the certification so that the prevailing party may execute. See footnote 13, supra
 
 
 [17]
 It is remarkable that an experienced attorney would sign a $400,000 note subject to an oral condition. It might be expected that such a person would insist on escrow protection or at least an acknowledgement in writing of the condition
 
 
 [18]
 The appellants contend that they are not financially unstable and possess funds adequate to cover their present litigation exposure. However, they allege at best possession of or possible access to funds only slightly in excess of their potential future liability. Thus, the appellants have not provided grounds for us to disbelieve the district court's conclusion regarding Granada Inc.'s "insubstantial existence." Moreover, because the injunction covers Granada Inc.'s assets and not Heine's, and the $750,000 judgment is only against Granada Inc., we reject their attempt to negate the showing of irreparable harm by citing Heine's assets. Finally, the preliminary injunction represents a reasonable encumbrance in light of the value of the expected judgment, as the Plans' action on the notes with attorneys' fees, interest, and costs seeks over $1,700,000 and the injunction prohibits Granada Inc. from dissipating $1,500,000 of the DWG litigation recovery