

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2006

# GlaxoSmithKline v. Merix Pharm Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4566

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"GlaxoSmithKline v. Merix Pharm Corp" (2006). *2006 Decisions.* Paper 811.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/811

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4566

———

GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P.

v.

MERIX PHARMACEUTICAL CORP.,
                                                           Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 05-cv-00898)
District Court Judge: Honorable Dickinson R. Debevoise

———

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
June 29, 2006

Before: BARRY, VAN ANTWERPEN and JOHN R. GIBSON,[*] Circuit Judges.

(Filed:  June 29, 2006)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

    Appellant Merix Pharmaceutical Corporation ("Merix"), defendant below, brings

———————————

    [*] Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit,
sitting by designation.

this interlocutory appeal to challenge the preliminary injunction entered against it following the motion of plaintiff-appellee GlaxoSmithKline Consumer Healthcare, L.P. ("Glaxo"). Glaxo sought the preliminary injunction incident to its lawsuit against Merix for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2. The District Court granted the injunction, and for the reasons set forth herein, we will affirm.

**I.**

Because we write only for the parties, our discussion of the facts is limited to those necessary to adjudication of the case. Glaxo produces and markets a number of over the counter ("OTC") pharmaceuticals, including Abreva. Abreva is an FDA-approved, non-prescription medication that shortens the duration of the healing time for cold sores. It has been publicly available since late 2000, and retails for roughly $15 to $18 a tube. Merix markets its cold sore product, Releev, online and in drug stores for roughly $15 to $20 a tube. Drug stores often stock Releev adjacent to or nearby Abreva.

Meryl Squires formed Merix after discovering that a blend of a common topical antiseptic, benzalkonium chloride and the herb Echinacea relieved the symptoms of the cold sores she frequently suffered. Her friends who tried the compound agreed that it was helpful. She obtained two patents on the substance, and ultimately marketed it as Releev. Merix is a small company, with a total of four employees. Merix started out selling Releev on the internet, and in June 2003, began retailing it in national drug store chains where it competed directly with Abreva. Merix's annual revenues have recently run to several million dollars.

Glaxo brought the instant suit against Merix because it believed the claims Merix made about Releev were false and misleading, and Releev would thereby unfairly compete with Abreva. This is not the first time Glaxo challenged Merix's claims about Releev. In 2003, Glaxo informed the FDA of the claims, which resulted in the agency sending a warning letter to Merix. In July 2004, Glaxo brought an advertising challenge against Merix before the National Advertising Division ("NAD") of the Better Business Bureau. Participation in NAD proceedings is voluntary, and the results are non-binding. Merix participated. The NAD found in favor of Glaxo on all issues presented; Merix appealed to the NAD Review Board. Glaxo abandoned the proceedings there and commenced the present action on February 16, 2005 in the United States District Court for the District of New Jersey.

As set forth by the District Court, Glaxo challenged, and sought a preliminary injunction against, a number of Merix's claims, including, *inter alia*:

"1. Releev has been "clinically proven": (a) to be a "1 Day Cold Sore Treatment" and (b) to "prevent outbreaks"[;]

2. Releev is endorsed by the University of Chicago;

3. Clinical research by Releev's Principal Clinical Investigator has been published;

4. Releev uses the product name Vira Medx;

5. The Releev package bears "before and after" photographs purportedly showing marked improvement after 1 day, after 3 days, and after 5 days."

App. 5. At the inception of the preliminary injunction hearing, counsel for Merix reported that Merix had altered its packaging and promotional material to remove the

problematic claims, and pressed that Glaxo's motion for injunctive relief be denied as moot. Its new claims, modified in time for the preliminary injunction hearing, consist of redesigned packaging that asserts:

> "1 Day Cold Sore Treatment
> Relieves Symptoms in Just a Day!"

Supp. App. 198. The top line is displayed in a more prominent typeface than the second. The packaging also offers "before and after" photos on the back. The prospective purchaser is referred to them by an exhortation on the front of the package to "See actual Before and After Photos on back panel." Three photos show a cold sore at one, three, and five days; it is progressively improved.

The District Court concluded that both sets of claims – those prior to the preliminary injunction proceedings, and those made as a result of their institution –  were false. Indeed, it found that "[t]he only claim that Merix can truthfully make for RELEEV is that it provides relief from cold sore *symptoms*." App. 14 (emphasis added). It concluded that the new set of claims still implied a *cure* by characterizing Releev as a "1 Day . . . Treatment" and showing before and after photos indicating Releev speeds healing rather than merely relieving symptoms. Without belaboring the point, Merix has essentially conceded, for purposes of proceedings on the preliminary injunction, that it could not prevail in its defense of its product claims.

With respect to the preliminary injunction, the District Court concluded that Glaxo had proved its case. The Court found that Glaxo had a high likelihood of success on the merits where it would have to prove that the claims violated § 43(a) of the Lanham Act,

-4-

15 U.S.C. § 1125(a).[1]  The District Court also concluded that Glaxo would suffer

irreparable harm absent the injunction.  In particular, the Court concluded that Releev and

Abreeva competed head-to-head because they were the only two cold sore products

selling in the $15 to $20 range, and stores placed them on shelves in close proximity to

each other.  Accordingly, given the unanswered testimony of Glaxo Vice President

Jeffrey Brown, Glaxo had lost, and would continue to lose, sales to Releev because of

Merix's false advertising.  Furthermore, when customers found that Releev did not live

up to its promises, its failures might also tar the reputation and goodwill of Abreva, which

is the only other cold sore product in the same price range.  To the extent the failure to

seek interlocutory relief as soon as absolutely practicable weighs against a finding of

irreparable harm, the District Court concluded that Glaxo should not have been faulted for

initially attempting to resolve its dispute by gentler means.  The District Court went on to

complete its preliminary injunction analysis, holding that the injury to Merix of granting

it did not outweigh the injury to Glaxo of withholding it, and that prevention of false

---

[1] The elements of a Lanham Act claim for false advertising are:

> "1) that the defendant has made false or misleading statements
> as to his own product [or another's]; 2) that there is actual
> deception or at least a tendency to deceive a substantial
> portion of the intended audience; 3) that the deception is
> material in that it is likely to influence purchasing decisions;
> 4) that the advertised goods traveled in interstate commerce;
> and 5) that there is a likelihood of injury to the plaintiff in
> terms of declining sales, loss of good will, etc."

Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992)
(quoting U.S. Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 922-23 (3d Cir.
1990)).

advertising and promotion of lawful competition would serve the public interest.[2]

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review grants or denials of preliminary injunctions as interlocutory matters pursuant to 28 U.S.C. § 1292(a)(1).[3] Examining the District Court's findings of fact, conclusions of law, and analysis, we discern neither error nor abuse of discretion. We will affirm for essentially the same reasons set forth by the learned Court in its September 13, 2005 opinion and order, and therefore do not recapitulate its analysis here.

We have only the following to add. The parties make much of the evidence adduced by Glaxo to support its claim of irreparable harm. Among other things, Merix argues both that it is speculative, and shows no injury that *post hoc* damages could not redress. Assuming, without deciding, that this evidence was less than optimal, we briefly note two points. First, Merix points to no evidence to rebut the testimony of Brown that

---

[2] The parties do not dispute the District Court's findings on these latter two issues, and we do not review them.

[3] The test for a preliminary injunction requires the district court to consider four now-familiar factors:

> "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."

Am. Civil Liberties Union of N.J. v. Black Horse Pike, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (citations and quotations omitted). We review orders granting or denying preliminary injunctions for abuse of discretion, but examine the underlying findings of fact for clear error and afford plenary review to questions of law. Doe v. National Bd. of Medical Examiners, 199 F.3d 146, 154 (3d Cir. 1999).

Merix's false advertising about Releev would damage divert sales of Abreva. The District Court was justified in relying on it, and we discern no clear error in its factual finding in this respect; that is, we are not "left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); see United States v. Westinghouse Elec. Corp., 788 F.2d 164, 169 (3d Cir. 1986) (no clear error where court relied on unrebutted testimony).

Second, any other result would set an unworkably high bar for a district court's fact finding under these circumstances. Given the time-is-of-the-essence nature of preliminary injunction proceedings, courts and parties cannot develop the same depth in the factual record they can at trial. See U.S. Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3d Cir. 1970). "[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury." Id. In deciding a motion for a preliminary injunction, a district court must *weigh* the appropriate factors, rather than mechanically apply them. See id. ("delicate balancing"); Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994).

Here, there is no denying the formidable strength of Glaxo's merits case. Merix concedes as much for purposes of this appeal in its summary of its argument in its brief. Br. of Appellant at 14. The District Court has made adequate – and uncontroverted – findings on the issue of irreparable injury to support its conclusion, and it properly considered and balanced those concerns pertinent to the interlocutory relief requested by Glaxo. Accordingly, the District Court did not abuse its discretion in issuing the

preliminary injunction.

## III.

As just discussed, we will affirm for the reasons set forth herein and in the September 13, 2005 opinion of the District Court.