Barry LEHMAN, Plaintiff, Appellee,

v.

REVOLUTION PORTFOLIO LLC,
Defendant, Third–Party
Plaintiff, Appellee,

v.

Stuart A. Roffman, Third–Party
Defendant, Appellant.

No. 98–1709.

United States Court of Appeals,
First Circuit.

Jan. 27, 1999.

David Berman, with whom Franklin H. Levy, Gina Dines Holness, and Abrams, Roberts, Klickstein & Levy were on brief, for appellant.

Paul M. McDermott, with whom Jonathan W. Fitch, Suzanne Q. Feldman and Sally & Fitch were on brief, for appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

SELYA, Circuit Judge.

This appeal grows out of a triangular 1987 financial transaction that involved the Farm Street Trust (the Trust), its beneficiaries (Barry Lehman and Stuart A. Roffman), and First Mutual Bank for Savings (the Bank). In the ensuing eleven years, the transaction imploded, litigation commenced, the Bank and Lehman became insolvent, parties came and went, and the case was closed and partially reopened. In the end, only a third-party complaint proved ripe for adjudication. Even then, the district court dismissed two of its three counts, but entered summary judgment on the remaining count. The third-party defendant, Roffman, now appeals. After sorting through the muddled record and the case's serpentine procedural history, we affirm.

## I.  BACKGROUND

The historical facts are not seriously disputed. On or about October 19, 1987, the Trust, acting through its trustee, executed a promissory note for $2,800,000 in favor of the Bank in order to fund the purchase of property in Dover, Massachusetts. Lehman and Roffman, each of whom enjoyed a 50% beneficial interest in the Trust, personally guaranteed the note, and Lehman proffered two parcels of real estate as additional collateral. In short order, the Trust defaulted on the loan and the Bank foreclosed on Lehman's properties. Lehman responded by suing the Bank in a Massachusetts state court seeking restraint or rescission of the imminent sale of his real estate. The gravamen of his suit was a claim that Roffman had fraudulently introduced a sham investor to the Bank in order to gull it into making the loan, and that the Bank, in swallowing this spurious bait hook, line, and sinker, had failed to exercise due diligence.

Roughly one year after answering the complaint, the Bank failed. The Bank was a federally-insured financial institution. Consequently, the Federal Deposit Insurance Corporation (FDIC), acting as receiver under 12 U.S.C. § 1821(c)(3)(A), removed the action to the federal district court and successfully asked to be substituted as defendant. Six months later, it moved for leave to amend its answer to include a counterclaim against Lehman, qua guarantor, for the outstanding loan balance. At the same time, it moved for leave to serve a third-party complaint against Roffman. A magistrate judge granted the motion to amend on July 14, 1992, and granted the impleader motion on January 21, 1993.

The FDIC's third-party complaint contained three counts. The first two sought indemnification and contribution, respectively, in regard to the claims advanced by Lehman. The third sought judgment against Roffman, qua guarantor, for the outstanding loan balance.

After Roffman answered the third-party complaint, the FDIC moved for summary judgment. Roffman not only objected, but also moved to strike the third-party complaint in its entirety. The FDIC opposed

that motion. Meanwhile, Lehman entered bankruptcy and requested a stay of proceedings in the civil suit.

On September 30, 1994, the district court, presumably acting in response to Lehman's stay request, issued a so-called "procedural order of dismissal" that stated:

> In order to avoid the necessity for the counsel to appear at periodic status conferences, it is hereby ORDERED that the above-entitled action be and hereby is dismissed without prejudice to either party moving to restore it to the docket if any further action is required upon completion and termination of all bankruptcy or arbitration proceedings.

Upon receipt of this order, the clerk of court closed the file, but did not enter a final judgment. *See* Fed.R.Civ.P. 58.

Eight months later, and periodically thereafter during the next few years, the FDIC's counsel wrote to the district court soliciting action in respect to its summary judgment motion. Although these letters were served upon Roffman's lawyer and entered on the district court docket, Judge Wolf did not respond to any of them until late 1997, when he set a motions hearing (presumably encompassing both the FDIC's summary judgment motion and Roffman's related motion to strike). At that hearing, rescheduled and eventually held on April 28, 1998, the court entered an order reinstating the third-party complaint. It simultaneously denied Roffman's motion to strike, granted the FDIC's motion for *brevis* disposition on count 3, and dismissed the remainder of the third-party complaint without prejudice. On June 1, 1998, Roffman filed a notice of appeal.

Later the same month, the FDIC moved to substitute Revolution Portfolio LLC (RP) as the real party in interest, averring that it previously had assigned its interest in certain of the Bank's assets (including the Trust's indebtedness and Roffman's guaranty) to RP. Roffman timely filed an opposition. He also moved for relief from the April 28 judgment, *see* Fed.R.Civ.P. 60(b), asserting that the district court, at the time it entered summary

judgment, did not have the real party in interest before it. The court granted the motion to substitute, *see* Fed.R.Civ.P. 25(c), and denied the motion for relief from judgment. Roffman did not file a second notice of appeal at that juncture.[1]

## II. DISCUSSION

Roffman asseverates that the district court never should have reopened the case in the first place; that, even if the court appropriately reinstated the third party complaint, it erred in entertaining the third-party complaint and granting summary judgment on count 3; and that the court impermissibly permitted an untimely substitution of parties. We consider these arguments *seriatim*.

### A. *Reinstatement.*

Roffman contends that reinstatement of the claim for the outstanding balance three years after the court's issuance of a "procedural order of dismissal" violated the temporal strictures of Fed.R.Civ.P. 60(b)(1) (which authorizes a court to relieve a party from a final order or judgment on grounds of, among other things, "mistake, inadvertence, surprise, or excusable neglect" if a motion is made within one year following the entry of the order or judgment). Roffman arguably waived this point by not raising it in the lower court after the court had notified him that it would hear the FDIC's summary judgment motion. After all, the opposition that he filed in anticipation of the hearing merely replicated arguments previously made, and did not question revivification of the action. We do not pursue the question of waiver, however, because the argument against reinstatement is easily dispatched on the merits.

Roffman begins from the mistaken premise that the so-called "procedural order of dismissal" entered by the district court on September 30, 1994, constituted a final judgment, which could be corrected only under Rule 60. In fact, the September 30 order did no more than bring about an administrative

---

1. Roffman did, however, file a neoteric Rule 60(b) motion on November 25, 1998. The district court denied it on December 15, and Roffman filed a second notice of appeal on December 23. That appeal is not before us.

closing of the case.[2] Administrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication. *See Corion Corp. v. Chen*, 964 F.2d 55, 56–57 (1st Cir.1992) (holding that an order deeming a case "administratively closed" was not a final, appealable order absent a separate document to signal the court's "view that the case had concluded"). The method is used in various districts throughout the nation in order to shelve pending, but dormant, cases. *See, e.g., id.; In re Arbitration Between Phila. Elec. Co. v. Nuclear Elec. Ins. Ltd.*, 845 F.Supp. 1026, 1028 (S.D.N.Y. 1994); *Mercer v. Allegheny Ludlum Corp.*, 132 F.R.D. 38, 38–39 (W.D.Pa.1990), *aff'd*, 931 F.2d 50 (3d Cir.1991). We endorse the judicious use of administrative closings by district courts in circumstances in which a case, though not dead, is likely to remain moribund for an appreciable period of time.[3]

Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository.[4] "In no event does such an order bar a party from restoring the action to the Court's active calendar upon an appropriate application." *In re Arbitration*, 845 F.Supp. at 1028. Nor is the power to resurrect reserved to the parties. The court, too, retains the authority to reinstate a case if it concludes that the administrative closing was improvident or if the circumstances that sparked the closing abate. Consequently, the September 30 order did not terminate the underlying case, but, rather, placed it in inactive status until such time as the judge, in his discretion or at the request of a party, chose either to reactivate it or to dispose of it with finality.

That ends this aspect of the matter. Judge Wolf opted to reopen the case to permit litigation of the third-party complaint after the FDIC's repeated correspondence brought the matter to his attention and further study convinced him that he had swept too broadly in closing the entire file.[5] This decision falls comfortably within the realm of the court's discretion, and the time parameters specified in Rule 60(b) do not apply. Hence, we uphold the district court's reinstatement order.

### B. Joinder.

■ Resolution of the reinstatement question only begins the work of disentangling the imbricated strands of Roffman's appeal. We next must answer the question whether the FDIC's deployment of a third-party complaint against Roffman was proper. In this

2. In fairness, the district court's misnomer—terming its action a "procedural order of dismissal"—likely contributed to Roffman's misimpression and to the FDIC's misguided attempt to justify the reopening under Fed.R.Civ.P. 60(a). Be that as it may, a court's use of a misleading label cannot alter the character of its action. *See Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 177 (1st Cir.1997); *Estate of Soler v. Rodriguez*, 63 F.3d 45, 47 n. 1 (1st Cir.1995); *see also Dopp v. Pritzker*, 38 F.3d 1239, 1244 n. 5 (1st Cir.1994) (noting that "the law does not require district courts to be letter-perfect in their syntax or choice of phraseology"). To avoid confusion in the future, we urge district courts to term such actions "administrative closings," and to tailor the orders that they enter to suit the reality of events.

3. Such circumstances include—but are by no means limited to—situations in which prosecution of a suit must be deferred indefinitely to permit the completion of arbitration proceedings, *see, e.g., Corion Corp.*, 964 F.2d at 56–57, or, as here, to await the lifting of the automatic stay imposed by the Bankruptcy Code, *see* 11 U.S.C. § 362(a) (1994).

4. Although an administrative closing may permissibly contain a built-in timetable under which it automatically will expire, effectively reinstating the case, *e.g., In re Grand Jury Subpoena*, 138 F.3d 442, 443 (1st Cir.1998), or, conversely, mature into a final judgment if no action inures within a specified period, *e.g., Cantrell v. International Bhd. of Elec. Workers*, 69 F.3d 456, 457 (10th Cir.1995) (en banc), such temporal restraints are not an inevitable concomitant of an administrative closing. At any rate, Judge Wolf's September 30 order incorporated no such feature.

5. While Lehman's bankruptcy required a stay vis-à-vis the claims involving him, *see* 11 U.S.C. § 362(a), it did not require the court to stay other aspects of the litigation, *see In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 969 (1st Cir.1993) (noting that the automatic stay provisions are limited to the bankrupt party).

regard, Roffman asserts that the district court should not have entertained the impleader, and that, therefore, the joined claim on the guaranty should fall of its own weight. We review a district court's decision to permit the filing of a third-party complaint under Fed.R.Civ.P. 14(a) for abuse of discretion. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1443 (2d ed.1990) (explaining that "whether a third-party defendant may be impleaded under Rule 14 continues to be a question addressed to the sound discretion of the trial court").

As previously explained, the FDIC impleaded Roffman as a third-party defendant on theories of indemnification and contribution (counts 1 and 2, respectively), maintaining, in essence, that if it were found to be liable to Lehman, then Roffman would in turn be liable to hold it harmless or, at least, contribute to any damages assessed against it. *See* Fed.R.Civ.P. 14(a) (contemplating the availability of third-party practice when a non-party is or may be liable "for all or part of the plaintiff's claim against" the defendant). In the same pleading, the FDIC asserted an independent claim for the outstanding loan balance, premised on Roffman's guaranty (count 3). RP (which now stands in the FDIC's shoes) acknowledges that the FDIC could not have brought count 3 as a stand-alone third-party claim under Rule 14(a), but asserts that count 3 was validly joined with counts 1 and 2 under Fed.R.Civ.P. 18(a) (providing for permissive joinder). To parry this thrust, Roffman contends that the FDIC's claims for indemnification and contribution were not viable under state law, and thus, since the use of Rule 14(a) admittedly hinged on the propriety of those claims, the FDIC should not have been allowed to implead him at all.

We doubt that Roffman has preserved this argument inasmuch as he did not raise it below in his opposition to the FDIC's summary judgment motion. *See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). We prefer not to inquire into this apparent waiver, however, for we conclude, without serious question, that the FDIC was entitled to implead Roffman under Rule 14(a) and that it appropriately joined the guaranty claim under Rule 18(a).

■ A defendant, acting as a third-party plaintiff, may implead any non-party "who is or *may be* liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a) (emphasis supplied). If the defendant acts within ten days of submitting his answer, he may bring a third party into the suit without leave of court. Otherwise, the court's permission must be obtained.[6] In that event, the determination is left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings. *See Highlands Ins. Co. v. Lewis Rail Serv. Co.,* 10 F.3d 1247, 1251 (7th Cir.1993); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir.1983). Under this liberal standard, a party accused of passive negligence (here, the FDIC) assuredly is entitled to implead the party who allegedly committed the relevant active conduct (here, Roffman) on a theory of indemnification. *See Montaup Elec. Co. v. Ohio Brass Corp.,* 561 F.Supp. 740, 748 (D.R.I.1983) (stating that, under Massachusetts law, tort-based indemnity arises if the indemnitee "did not join in the [indemnitor's] negligent act but became liable in consequence of it").

■ The FDIC's third-party claim for contribution against Roffman similarly passes muster because Roffman and the Bank (the FDIC's predecessor in interest) were putative joint tortfeasors (i.e., according to the

---

**6.** In this case, the FDIC obtained leave of court through an order duly entered by a magistrate judge. Roffman did not appeal that order to the district judge within the time prescribed by law, and thus cannot be heard to complain about it here. *See Sunview Condo. Ass'n v. Flexel Int'l, Ltd.,* 116 F.3d 962, 964–65 (1st Cir.1997); *see also* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a).

complaint, Roffman's fraudulent acts combined with the Bank's negligent omissions to create harm). *See* Mass. Gen. Laws ch. 231B, § 1(a) (1986) (providing a right of contribution among persons who are jointly liable in tort for the same injury); *see also Wolfe v. Ford Motor Co.*, 386 Mass. 95, 100, 434 N.E.2d 1008 (1982) (allowing contribution even though the two joint tortfeasors were liable under different theories of tort liability).

To be sure, Roffman argues that because Lehman's complaint sought only restraint or rescission of the property sales, and not damages, a third-party claim for contribution should not lie. But this argument gains him no ground. Even though Lehman's complaint did not explicitly seek money damages, that omission did not eliminate the possibility that damages might be awarded to him. *See* Fed.R.Civ.P. 54(c) (providing that "every final judgment [except those by default] shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings"). Rule 54(c) is particularly apt in this situation, for a party may pray for rescission and be entitled to it, yet only receive damages. *See, e.g., Coggins v. New England Patriots Football Club, Inc.*, 397 Mass. 525, 536, 492 N.E.2d 1112 (1986) (observing that "because rescission is an equitable remedy, the circumstances of a particular case may not favor its employment," and limiting the plaintiff's remedy to damages). As long as damages may be awarded in lieu of rescission, impleader properly may be used to seek contribution toward those potential damages. *See, e.g., Prudential Ins. Co. v. BMC Indus., Inc.*, 113 F.R.D. 100, 102–03 (S.D.N.Y.1986). It follows inexorably that the district court did not err in denying Roffman's motion to strike and allowing the FDIC's Rule 14(a) claims to stand.

■ Against this backdrop, the court properly assumed jurisdiction over count 3 of the third-party complaint. Rule 18(a) authorizes a third-party plaintiff to "join, either as independent or as alternative claims, as many claims, legal, equitable, or maritime, as the [third-party plaintiff] has against an opposing party." This authorization is subject only to the usual requirements of jurisdiction and venue (none of which are implicated here) and the district court's discretionary power to "direct an appropriate procedure for trying the claims." *Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 68–72 (3d Cir.1971). Given Rule 18(a)'s broad expanse, misjoinder of claims has become an anachronism in federal civil practice. *See* 6A Wright, et al., *supra*, § 1582 (suggesting that, under Rule 18(a), there no longer "can be [a] misjoinder of claims").

In this instance, Roffman signed an unconditional personal guaranty of a loan, and the borrower later defaulted. As a holder in due course of the note, the FDIC had an independent claim for the outstanding balance against Roffman. There is absolutely no reason why the FDIC could not append its independent claim on the guaranty to its other claims against Roffman.

As a fallback position, Roffman suggests that the third-party complaint against him should have been dismissed because the FDIC had a complete defense under 12 U.S.C. § 1823(e) (1994) to the claims brought by Lehman.[7] We do not agree. Even if section 1823(e) offered the FDIC a potentially strong defense against Lehman's claims, the record fails to show that the mere existence of that statute rendered Lehman's complaint a nullity.

■ There is, moreover, a broader point. A district court must oversee third-party practice with the core purpose of Rule 14(a) in mind: avoiding unnecessary duplication and circuity of action. *See* 6 Wright, et al.,

---

7. The statute that Roffman mentions reflects the Court's decision in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and prohibits a litigant from relying upon any agreement that tends to diminish or defeat the interest of the FDIC in any asset acquired by it from a failed bank, unless the agreement was written, executed contemporaneously with the bank's acquisition of the asset, approved by the bank's board of directors or loan committee, reflected in the bank's minutes, and continuously maintained as an official record. *See* 12 U.S.C. § 1823(e) (1994); *see also Langley v. FDIC*, 484 U.S. 86, 90–93, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

*supra*, § 1443. Requiring a district court to determine the merits of all defenses potentially available to the original defendant as a precondition to allowing that defendant to file a third-party complaint would frustrate this purpose and countervail the efficient allocation of judicial resources. Thus, as long as a third-party action falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution. So here.

### C. *The Merits.*

To warrant summary judgment, a movant must show that a controversy presents "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review summary judgment orders de novo, considering the record and all reasonable inferences to be drawn therefrom in the light most favorable to the party opposing summary judgment. *See National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995).

In this case, Roffman does not contest the key facts (e.g., the default on the note, the validity of the guaranty, and the amount of the unpaid balance on the defaulted loan, net of foreclosure proceeds). Instead, he pegs his opposition to summary judgment on whether the third-party complaint was properly before the district court. Having rejected the arguments that he raises in that vein, *see supra* Part II(B), we now must affirm the district court's grant of summary judgment.

### D. *Substitution of Parties.*

Finally, Roffman seeks to challenge the order substituting RP for the FDIC. This challenge is not properly before us. We explain briefly.

■ Roffman filed his notice of appeal on June 1, 1998. In terms, it purported to appeal from the district court's April 28 order—nothing more. The motion to substitute postdated the filing of the notice of appeal. The order allowing substitution was entered on August 12, 1998. Roffman nei-

ther amended his original notice of appeal to reflect his displeasure with the substitution order nor filed a new notice of appeal addressed to that order within the time allowed by law. *See* Fed. R.App. P. 4(a).

■ It is black-letter law that a notice of appeal must specify the order or judgment to which the appeal is addressed. *See* Fed. R.App. P. 3(c). Failure to make a sufficient specification ordinarily debars the appellant from arguing the propriety of an unspecified ruling on appeal. *See Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992); *United States v. Velez Carrero*, 140 F.3d 327, 330 (1st Cir.1998); *Kotler v. American Tobacco Co.*, 981 F.2d 7, 10–11 (1st Cir.1992). Roffman runs afoul of this tenet in respect to the substitution order—an order that eventuated after he filed his notice of appeal. We are, therefore, without jurisdiction to consider the issue.

## III. CONCLUSION

We need go no further. The district court committed no error in administratively closing the case and then reinstating a portion of it. By the same token, the court did not err either in permitting the maintenance of the third-party complaint against Roffman or in permitting the joinder of an independent claim against him within the contours of that third-party complaint. To close the circle, the court acted appropriately in granting summary judgment to the FDIC on that independent claim.

***Affirmed. Costs in favor of Revolution Portfolio LLC.***