

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2004

# Penn West Assoc v. Litman

Precedential or Non-Precedential: Precedential

Docket No. 02-4344

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Penn West Assoc v. Litman" (2004). *2004 Decisions*. Paper 564.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/564

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4344

PENN WEST ASSOCIATES, INC., a
Corporation
t/d/b/a THE WILKINS HOUSE,

Appellant

v.

KATHERINE COHEN, Co-Executrix of
the Estate of Eugene M. Litman*;
MICHAEL LITMAN, Co-Executor of
the Estate of Eugene M. Litman*;
JAMES W. MCCARTHY; PENN WEST
ASSOCIATES, also known as PENN
WEST OFFICE BUILDING, a
limited partnership; BRANDYWINE
AGENCY; ALPINE
CONSTRUCTION CO., a Corporation;
PROPERTY DEVELOPMENT
ASSOCATES,    INC., a Corporation;
PITTSBURGH INVESTMENT
COMPANY, a Partnership;
PATRICIA KATZ, general partner;
ABLE HOME CENTER, INC.;
DIANNA
BOBACK, an individual; MARGARET
MULL, an individual

*(Amended pursuant to Court
Order of May 21, 2004)

On Appeal from the
United States District Court for the
Western District of Pennsylvania
D.C. Civil Action No. 97-cv-01678
(Honorable Alan N. Bloch)

Argued September 15, 2003

Before: ALITO, AMBRO and
CHERTOFF, Circuit Judges

(Opinion filed June 9, 2004)

Bela A. Karlowitz, Esquire (Argued)
Daniel M. Flynn, Esquire
Karlowitz & Cromer
429 Forbes Avenue
1201 Allegheny Building
Pittsburgh, PA  15219

*Attorneys for Appellant*

Robert L. Potter, Esquire (Argued)
David A. Strassburger, Esquire
Strassburger, McKenna, Gutnick
   & Potter
444 Liberty Avenue
Four Gateway Center, Suite 2200
Pittsburgh, PA 15222

James A. Ashton, Esquire
Suite 227
500 Lewis Run Road
Pittsburgh, PA 15122

*Attorneys for Appellees*

OPINION OF THE COURT

AMBRO, Circuit Judge:

We review the District Court's November 5, 2002 order denying the motion of Penn West Associates, Inc. ("Penn West") to re-open its civil RICO case. That case was administratively closed by order of the District Court on August 19, 1999, after both parties informed the Court that they tentatively settled their dispute. In fact, the civil RICO case was not concluded. The District Court mistook its administrative closure of the case as a final decision, which mistakenly led it to treat Penn West's motion to re-open the case and list it for trial as one under Federal Rule of Civil Procedure 60(b). Thus it erred in denying Penn West's motion to re-open.

## I. Background

On September 11, 1997, Penn West filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania against Eugene M. Litman (individually and in his capacity as Executor of the Estate of H. Raymond Litman); James W. McCarthy; Penn West Associates, a partnership comprised of Eugene M. Litman, Michael A. Litman, and James W. McCarthy (Eugene M. Litman, James W. McCarthy, and Penn West Associates being hereinafter collectively referred to as the "Litman Group"); and numerous other defendants. The suit arose from Lawrence A. Levine's purchase in 1993 of all of the capital stock of Penn West from Eugene M. Litman, James W. McCarthy, and the Estate of H. Raymond Litman. Penn West's complaint contained, *inter alia*, a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. According to the complaint, the defendants had purportedly looted, and aided in the looting of, Penn West's assets between February 1988 and late 1993, when Eugene M. Litman, H. Raymond Litman, and McCarthy owned the company. Levine was never a named party to the action.

On September 17, 1997, the action was removed to the United States District Court for the Western District of Pennsylvania. Prior to trial, all counts of the complaint were dismissed except for the civil RICO claim against the Litman Group. For trial purposes, the case was also joined with a related *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-3731, captioned *United States ex rel. Weinstein v. Litman*, No. 96-1860. Robert Potter, Esq. was lead counsel for the Litman Group in both actions. Robert Ridge, Esq. was lead counsel for the private plaintiff in the False Claims Act case. While the RICO case was pending trial, Penn West and Levine both filed bankruptcy petitions in the United States Bankruptcy Court for the Western District of Pennsylvania. Mary Reitmeyer, Esq., was appointed as Trustee for Penn West in its case, and thereafter obtained an order appointing John Orie, Esq. as special counsel for Penn West for purposes of pursuing the RICO action.

On July 1, 1999, after six days of trial in the RICO case, counsel for the parties informed the District Judge that

2

they had reached a settlement. During a telephone conference on the record that day among, *inter alia*, the District Judge, Potter and Orie, Potter informed the District Court that his clients (the Litman Group) had agreed to pay $25,000 to the United States Department of Justice to settle the False Claims Act case and that the Department of Justice had approved the settlement. Furthermore, the Litman Group had agreed to pay $75,000 to Penn West to settle the RICO case. Potter informed the District Court that "[m]utual releases will be exchanged with everybody in the RICO case[,] including attorneys." Potter also stated that, as part of the settlement, the Litman Group would be dropping its claims against Levine individually in his bankruptcy proceeding and would assert no further claims in either Levine's or Penn West's bankruptcy proceedings. Moreover, the Litman Group would be marking as satisfied any state court judgments it had obtained against Levine personally.[1]

Although Orie did not speak at the conference, at no time did he object to the description of the terms of the settlement. The parties then agreed that they would not file the settlement agreement of record in the District Court because of concern that, if filed, the agreement could not be sealed. The District Judge ended the conference by stating: "We'll advise the jury that they are discharged, and we'll wait to receive from you the settlement papers that I have to approve."

Seven weeks later, the Court, having heard nothing further from the parties and making no inquiry of them, issued the following order:

> AND NOW, this 19th day of August, 1999, having been advised by the parties of the full and final settlement of the above captioned matter and there are no further matters pending before the Court,
>
> IT IS HEREBY ORDERED that the Clerk of the Court mark the above captioned matter closed.

The triggering premise of the order (final settlement) proved, however, to be premature. No settlement agreement was ever drafted and settlement papers had never been sent to, nor approved by, the District Court. Nevertheless, the order was entered by the Clerk and counsel were notified accordingly.[2]

As a result of the August 19, 1999 order, the parties and the District Court

---

[1]The District Court's opinion notes that this reference to judgments against Levine relates to a "long history of a contemptuous and litigious relationship" between Levine and one or more members of the Litman Group.

---

[2]The release to settle the False Claims Act case was nonetheless executed and the Litman Group paid the $25,000 settlement amount to the Department of Justice.

3

appear to have operated under the assumption that the litigation was terminated. Approximately three months later, Reitmeyer, the bankruptcy Trustee for Penn West, filed a motion with the District Court to compel enforcement of the purported settlement terms of the RICO case. The motion stated that the settlement had not been finalized because the Litman Group had insisted that Levine personally join in the "mutual release" referred to during the July 1, 1999 teleconference. The Litman Group's response to Penn West's motion stated that the settlement had not been completed for the sole reason that Levine "consistently refused to execute a general release in favor of the Litman Group Defendants, notwithstanding that he expects the Litman Group Defendants to release all of their claims against him individually."[3]

A conference with the parties (including Levine) was convened by the District Court on November 18, 1999 to discuss the motion. During this conference, Levine stated that he was not personally represented by Orie and that he had never authorized Orie to include him in the settlement. As later recounted in its opinion, the District Court found it "incredulous that the defendants would pay money to [Penn West], solely owned by Lawrence Levine, and yet leave themselves open to lawsuits filed by Levine." *Penn West Associates, Inc. v. Litman*, No. 97-1678, slip op. at 6 (W.D. Pa. Nov. 5, 2002). Nevertheless, the District Court stated that the case was "settled and closed." The Court further stated that the settlement agreement, which had not been made a part of the record, was a contract between the parties whose terms would have to be litigated in another forum. It therefore denied Penn West's motion to enforce the settlement.[4]

---

[3]The Litman Group's response concerned the substance of the settlement negotiations, indicating that it was Orie, special counsel for Penn West, who intended any settlement to encompass "all matters." During the negotiations, Potter, counsel for the Litman Group, apparently informed Orie that the Litman Group was willing to release its claims against Levine individually, but only in return for a general release from, among others, Levine personally.

[4]The District Court, in its November 5, 2002 opinion, subsequently noted that its refusal to enforce the purported settlement was based on *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 380-81 (1994) (holding that a district court lacks jurisdiction to enforce a settlement agreement unless the court retains jurisdiction over the agreement or incorporates the terms of the agreement into its dismissal order), and *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 141 (3d Cir. 1993) (holding that a district court does not have the power to exercise jurisdiction over a petition to enforce a settlement "unless ... [it] is part of the record, incorporated into an order of the district court, or the district court has manifested an intent to retain

4

Penn West's Trustee (Reitmeyer) did not seek immediately to re-open Penn West's civil RICO case. Instead, she filed an adversary proceeding in Penn West's ongoing bankruptcy case to enforce the purported settlement against the Litman Group. On September 11, 2000, the Bankruptcy Court issued an opinion stating that

> [t]here existed a mistake in the understanding of the parties as to the terms of settlement. The mistake was basic and central to any settlement. Defendants were not going to settle on the terms offered without the release from Mr. Levine and Mr. Levine, believing he had no control over matters having to do with the corporation, was willing to let the Trustee settle for the corporation, but he individually was not going to release the defendants.

The Bankruptcy Court concluded that, due to the mistake, no settlement agreement existed and therefore denied Penn West's motion to enforce the settlement.

The Trustee again did not return to the District Court to seek re-opening the closed RICO civil case. Rather, Penn West proceeded through its bankruptcy

---

jurisdiction"). *See Penn West Associates, Inc.*, No. 97-1678, slip op. at 6-7.

until March 15, 2002, when a plan of reorganization was approved by the Bankruptcy Court. Under the plan, Levine regained control of Penn West.

Subsequently, on May 10, 2002, Penn West filed with the District Court a Motion to List the Case for Trial and Other Relief. The motion related the foregoing facts and that the Litman Group had filed a substantial claim against Levine in his ongoing individual bankruptcy case. Penn West argued that the resolution of its civil RICO case would affect substantially the claims of the Litman Group and others in Levine's individual bankruptcy case. Finally, the motion requested that "(i) the docket entry in this Civil Action showing that the case is settled be stricken and (ii) the case be scheduled for trial forthwith . . . ." No legal authority for this request was cited.

The Litman Group's memorandum in opposition to Penn West's motion argued that "[t]o declare a 'closed' case 'open' for reasons other than clerical mistake, it is necessary to file a motion for relief from the final order under Federal Rule of Civil Procedure 60(b)." Agreeing with the Litman Group, the District Court analyzed Penn West's motion under Rule

60(b).[5]  On November 5, 2002, the Court

denied the motion, holding that Penn West could not satisfy the requirements of Rule 60(b)(1), (2), (3) or (6).  Penn West filed a timely notice of appeal from the District Court's order.

## II. Jurisdiction

The District Court had jurisdiction over Penn West's civil RICO action pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction, and removal was proper under 28 U.S.C. § 1441.  With respect to our appellate jurisdiction, we have noted previously that, while "it would appear that an order denying a Rule 60(b) motion is appealable under 28 U.S.C. § 1291," this may not always be the case.  *See Torres v. Chater*, 125 F.3d 166, 167-68 (3d Cir. 1997).  In *Torres*, we stated:

> There is an interdependence between the "finality" required for Rule 60(b) and section 1291.  In some instances, the Court of Appeals may not entertain an appeal [from a denial of a Rule 60(b) motion] under section 1291 because the underlying order in the district court is purely interlocutory and, thus, not within the scope of Rule 60(b), which applies only to

[5]Rule 60(b) states in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and

(3) not more than one year after the judgment, order, or proceeding was entered or taken.

6

"final" judgments and orders.

*Id.* at 168 (citing *Kapco Mfg. Co. v. C & O Enters.*, 773 F.2d 151, 153 (7th Cir. 1985)). Thus, if the denial of the Rule 60(b) motion is itself interlocutory, we normally do not have appellate jurisdiction to review that denial. *Torres* recognized, however, that even where an underlying order is purely interlocutory, we may nonetheless review a district court's denial of a Rule 60(b) motion if the denial has the effect of "'wrap[ping] up all matters pending on the docket,' thus making the decision final." *Id.* (quoting *Kapco Mfg. Co.*, 773 F.2d at 153). An example is a district court's interlocutory order remanding a case to an administrative agency for reconsideration. *See id.* If, while the case was pending before the agency, a party filed a Rule 60(b) motion arguing that the remand had been procured by fraud on the court, a denial of that motion would be dispositive of the charge of fraud. *Id.* Given those circumstances, we held that the underlying remand order may be considered final for purposes of Rule 60(b) and the denial of a Rule 60(b) motion would be a final decision, reviewable under 28 U.S.C. § 1291. *Id.*

We are, however, not presented with the difficulties addressed in *Torres* because this case does not require us to review the merits of the denial of a Rule 60(b) motion, for we conclude below that it was error to apply Rule 60(b) in this case. The decision before us is the District Court's denial of a motion to re-open an administratively closed case. The practical effect of that denial was to dismiss Penn West's action. Thus we hold that the District Court's November 5, 2002 order was a final decision under 28 U.S.C. § 1291. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) (noting that the Supreme Court has adopted a "pragmatic approach to the question of finality"); *cf. In re Grand Jury Proceedings (U.S. Steel-Clairton Works)*, 525 F.2d 151, 155 (3d Cir. 1975) (holding that a district court's indefinite stay of federal grand jury proceedings pending a state civil contempt action had "the practical effect of a dismissal of the proceedings" and hence was a final order). We therefore have jurisdiction over this appeal.

## III. Standard of Review

A District Court's denial of a Rule 60(b) motion generally is reviewed for abuse of discretion. *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 445 (3d Cir. 2003). The District Court's decision to treat Penn West's motion as a Rule 60(b) motion, however, is purely a question of law, which we review *de novo*. *See United States v. Small*, 333 F.3d 425, 427 (3d Cir. 2003) (citing *United States v. Singletary*, 268 F.3d 196, 198 (3d Cir. 2001)).

## IV. Discussion

On appeal, Penn West argues that the District Court erred in denying its motion to re-open the civil RICO case and list it for trial, as its case did not settle and the District Court's August 19, 1999 order marking the case closed was void. Penn

7

West concludes that the District Court should have reviewed the motion under Rule 60(b)(4), which allows relief from a "void judgment," rather than conducting an analysis under Rule 60(b)(1), (2), (3), and (6). We agree that the District Court erred, albeit for different reasons than those articulated by Penn West. We first address whether Rule 60(b) is the correct rule governing Penn West's motion. We next address the significance of the District Court's August 19, 1999 order. Finally, we respond briefly to the concerns raised by our dissenting colleague.

## A.    Application of Rule 60(b)

Our analysis of Rule 60(b) begins, as it must, with its text (*see supra* note 5). It allows a party to seek relief only from a "final judgment, order, or proceeding . . . ." The application of the word "final" is clarified by the Advisory Committee Notes, which explain that

> the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Accordingly, we have held that Rule 60(b)

"applies only to 'final' judgments and orders." *Torres*, 125 F.3d at 168; *see also Kapco Mfg. Co.*, 773 F.2d at 154 (holding that "Rule 60(b) must be limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291").[6]

The concept of "finality" is well-settled. In *Catlin v. United States*, 324 U.S. 229, 233 (1945), the Supreme Court defined a "final decision" for purposes of appeal "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Interpreting *Catlin*, we have described a final decision as "'one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, *ministerially*, the execution of the decree.'" *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993) (quoting *In re Moody*, 825 F.2d 81, 85 n.5 (5th Cir. 1987)) (emphasis in original). Accordingly, "there is no final order if claims remain unresolved and their resolution is to occur in the district court." *Aluminum Co. of Amer. v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir.

---

[6]In *Kapco*, the Court reasoned that Rule 60(b) must be so limited because "[a] party should not get immediate review of an order for discovery, or one denying summary judgment and setting the case for trial, just by filing a Rule 60(b) motion to set aside the order and then appealing the denial of this motion." 773 F.2d at 154.

1997) ("Ordinarily, a final decision will have two effects. First, the decision will fully resolve all claims presented to the district court. Second, after the decision has been issued, there will be nothing further for the district court to do."). This description accords with several other courts of appeals. *See Moody*, 825 F.2d at 85 n.5; *Youghiogheny & Ohio Coal Co. v. Baker*, 815 F.2d 422, 424 (6th Cir. 1987); *United States v. Western Elec. Co.*, 777 F.2d 23, 26 (D.C. Cir. 1985); *see also Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994) ("[A final judgment] should be a self-contained document, saying who has won and what relief has been awarded . . . .").

Is the District Court's August 19, 1999 order a final decision? If not, relief is unavailable under Rule 60(b). At the outset, we note that the order did not resolve, or even purport to resolve, any of the claims that Penn West presented to the District Court. Rather, its purpose was solely to direct the Clerk of the Court to mark Penn West's case as closed.[7] More

importantly, there was more for the District Court to do. The parties had to continue their litigation in both the District Court and the Bankruptcy Court to determine: (1) whether they had indeed "settled" their case in July 1999, and (2) (a) if so, the terms of that settlement and whether to approve it, or (b) if not, how to achieve a resolution of their ongoing dispute. Accordingly, the District Court's order does not satisfy our definition of a final decision.

Our conclusion is not altered by the parties' mistaken assumption that their litigation was terminated by the District Court's August 19, 1999 order. The Court itself contributed to this misunderstanding with its November 18, 1999 statement on the record that "our cases are settled and closed, and that's the way they are going to stay, and if you have a dispute over the terms of the settlement, that's a contract dispute, and you go ahead and litigate that contract dispute wherever you please." This mistaken assumption on the part of the District Court does not end the case. *See Bensalem Township. v. American Fidelity Fire Ins. Co.*, 644 F.2d 990, 994 (3d Cir. 1981) ("[T]he boundaries of section 1291 jurisdiction do not depend on the trial court's belief that a particular

---

[7]We also note that the factual basis given for the order is incorrect. It stated that the District Court had been "advised by the parties of the full and final settlement" of Penn West's case. That event, however, never occurred. All parties agree that counsel and the District Court did not communicate between the July 1, 1999 teleconference and the August 19, 1999 order. The parties also agree that no final settlement papers were sent to the District Court. We thus cannot discern

from the record any substantive reason for the issuance of the District Court's order, especially after telling the parties on July 1, 1999 that "[w]e'll advise the jury that they are discharged, and we'll wait to receive from you the settlement papers that I have to approve."

9

decision is or is not 'final' . . . ."). That the parties followed suit in the belief that the District Court's order terminated their litigation does not make it so. *Cf. Brown Shoe Co. v. United States*, 370 U.S. 294, 305 (1962) (holding that "the mere consent of the parties to the Court's consideration and decision of the case cannot, by itself, confer jurisdiction on the Court" in the absence of a final judgment); *Gerardi v. Pelullo*, 16 F.3d 1363, 1368 (3d Cir. 1994) ("[W]e directed the parties to brief the finality issue, notwithstanding their agreement that the certification was proper, for we consider the validity of a Rule 54(b) certification ourselves.").

Because the District Court's August 19, 1999 order was not a final judgment or order, we hold that it erred in analyzing Penn West's motion under Rule 60(b). How then should the District Court have analyzed Penn West's motion? To that we now turn.

**B.    Administrative Closings**

To determine the nature of the relief requested in Penn West's motion to re-open, we need to clarify the legal significance of the District Court's August 19, 1999 order directing the Clerk to mark Penn West's civil RICO case closed. We conclude that the sole legal consequence of this order was to remove Penn West's case from the District Court's active docket. Several courts refer to such an order as an "administrative closing."

The Court of Appeals for the First Circuit has addressed the purpose and significance of administrative closings in

*Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 392 (1st Cir. 1999). There, the plaintiff in a civil action requested the District Court to stay its proceedings because he had entered bankruptcy. *Id.* at 391. The District Court, responding to this request, issued what it termed a "Procedural Order of Dismissal." *Id.* It stated:

> In order to avoid the necessity for the counsel to appear at periodic status conferences, it is hereby ORDERED that the above-entitled action be and hereby is dismissed without prejudice to either party moving to restore it to the docket if any further action is required upon completion and termination of all bankruptcy or arbitration proceedings.

*Id.* Upon receiving the order, "the clerk of court closed the file, but did not enter a final judgment." *Id.* At the request of one of the parties, the District Court re-opened the case three years later and heard its merits. *Id.* One of the appellant's arguments on appeal was that the Court had improperly re-opened the case. *Id.* The appellant argued that the case had been dismissed and to re-open it three years after dismissal violated the timeliness requirements of Rule 60(b). *Id.* The First Circuit clarified that the District Court's order, while labeled a "dismissal," was not a final judgment that could be

corrected under Rule 60. *Id.* Rather, the order did no more than administratively close the case. *Id.* at 391-92. The fact that the order had a misleading label "cannot alter the character of its action." *Id.* at 392 n.2.

The *Lehman* Court explained the nature of an administrative closing as follows:

> Administrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication. *See Corion Corp. v. Chen*, 964 F.2d 55, 56-57 (1st Cir. 1992) (holding that an order deeming a case "administratively closed" was not a final, appealable order absent a separate document to signal the court's "view that the case had concluded"). The method is used in various districts throughout the nation in order to shelve pending, but dormant, cases. *See, e.g., id.*; *In re Arbitration Between Phila. Elec. Co. v. Nuclear Elec. Ins. Ltd.*, 845 F. Supp. 1026, 1028 (S.D.N.Y. 1994); *Mercer v. Allegheny Ludlum Corp.*, 132 F.R.D. 38, 38-39

(W.D. Pa. 1990),[8] *aff'd*, 931

---

[8]We think it telling the manner in which the District Court in *Mercer* explained the Western District of Pennsylvania's practice of issuing orders directing the Clerk of Court to mark a case "closed."

> It is the practice of this Court to administratively close those cases where representations are made that settlement is imminent or some other disposition of the case is contemplated by the parties other than adjudication. The administrative closing Order reads, in part, "[N]othing contained in this Order shall be considered a dismissal or disposition of this matter, and should further proceedings in it become necessary or desirable, either party may initiate it in the same manner as if this Order had not been entered."

132 F.R.D. at 39 n.1. In this case, the District Court's August 19, 1999 order appears not to conform to the Western District's practice described above. If the order had contained the language recited by the *Mercer* Court, Penn West and the Litman Group likely would have better understood its nature and effect. The failure to include such language, however, did not render the District Court's August 19, 1999 order any less an administrative

F.2d 50 (3d Cir. 1991). We endorse the judicious use of administrative closings by district courts in circumstances in which a case, though not dead, is likely to remain moribund for an appreciable period of time.

*Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository.* "In no event does such an order bar a party from restoring the action to the Court's active calendar upon an appropriate application." *In re Arbitration*, 845 F. Supp. at 1028 (S.D.N.Y. 1994). Nor is the power to resurrect reserved to the parties. The court, too, retains the authority to reinstate a case if it concludes that the administrative closing was improvident or if the circumstances that sparked the closing abate.

<hr/>

closing.

*Id.* at 392 (emphasis added).[9] *Lehman* therefore ruled that the District Court's "Procedural Order of Dismissal" "did not terminate the underlying case, but, rather, placed it in an inactive status until such time as the judge, in his discretion or at the request of a party, chose either to reactivate it or to dispose of it with finality." *Id.*

*Lehman*'s view of administrative closings has been followed by the Courts of Appeals for the Tenth and Eleventh Circuits. *See, e.g.*, *Florida Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) ("Designating a case "closed" does not prevent the court from reactivating a case either of its own accord or at the request of the parties."); *Cantrell v. International Broth. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 457 (10th Cir. 1995); *see also American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 (5th Cir. 2002) (Dennis, J., concurring) ("[T]he administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance."); *cf. Mickeviciute v. I.N.S.*, 327 F.3d 1159, 1161 n.1 (10th Cir. 2003) (noting that an "[a]dministrative closure of

<hr/>

[9]The *Lehman* Court also noted that administrative closings "may permissibly contain a built-in timetable under which it automatically will expire, effectively reinstating the case . . ., or, conversely, mature into a final judgment if no action inures within a specified period . . . ." 166 F.3d at 392 n.4 (citations omitted).

12

[an immigration] case temporarily removes the case from an immigration judge's calendar . . . . The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations").

*Lehman* presents a reasoned explication of a device that, when used in correct context, enhances a district court's ability to manage its docket. We adopt that rationale and hold that an order merely directing that a case be marked closed constitutes an administrative closing that has no legal consequence other than to remove that case from the district court's active docket.

We recognize that, in our case, nearly three years have passed between the District Court's August 19, 1999 order to mark the case closed and Penn West's May 10, 2002 motion to re-open the case and list it for trial. Yet we know of no provision in the Federal Rules of Civil Procedure by which the mere passage of time can mature an administrative closing into a dismissal or a final judgment or order. As the *Lehman* Court noted, a district court can provide, in the text of its order, a built-in timetable under which the administrative closing may automatically expire, or, alternatively, mature into a final decision. *See* 166 F.3d at 392 n.4. In this case, however, the District Court's August 19, 1999 order provided no such feature. We can only conclude that the Court's order merely placed Penn West's civil RICO case in an "inactive status until such time as the judge, in his discretion or at the

request of a party, chose either to reactivate it or to dispose of it with finality." *Id.* at 392.

We also recognize the possibility that there are cases in our Circuit in which the last order docketed is an administrative closing order. If those administrative closings comport with the practice described in *Mercer*, 132 F.R.D. at 39 n.1 (*i.e.*, clearly indicating the status of the litigation), there is little possibility that the parties mistake the order as a final decision. Here, however, it is easy to understand why counsel believed their case over. As noted already, that belief does not a final decision make, for an administrative closing order is not sanctioned by the Federal Rules and does not dispense with the technical requirements of finality. These requirements include not only a resolution of the parties' claims before the District Court, but also compliance with Rules 54 and 58 of the Federal Rules of Civil Procedure.[10] It is indeed possible that, as

---

[10]Fed. R. Civ. P. 54(a) provides, in part: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 58 (as in effect when the District Court issued its August 19, 1999 order; the rule was rewritten, in April 2002, in a manner that does not affect our analysis) required that "[e]very judgment shall be set forth on a separate document." The separate document requirement must be applied "mechanically." *United States v. Indrelunas*, 411 U.S. 216, 221-22 (1973);

13

a consequence of our holding that the administrative closing order in our case has no legal significance beyond removing the case from the District Court's docket, litigants will return to the courts to re-open their administratively closed cases. Our fidelity to uniform and consistent application of the Federal Rules, however, does not permit us to hold otherwise.

We endeavor today only to correct a misapplication of Fed. R. Civ. P. 60(b), and to clarify the legal significance of the District Court's August 19, 1999 order administratively closing Penn West's civil RICO case, so that the motion before the District Court may be properly analyzed. We decline to address whether Penn West's case may be equitably barred from restoration to the District Court's active docket or whether the case may be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). The District Court may consider these issues on remand.

---

*see also Gregson & Assoc. Architects v. Government of the Virgin Islands*, 675 F.2d 589, 591-92 (3d Cir. 1982) (mandating a "mechanical" application of Rule 58's separate document requirement, even where the appellant had mistakenly believed that the district court had issued a final judgment); *United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) (applying Rule 58's separate document requirement to determine the timeliness of motions for post-judgment relief under Rules 59 and 60).

## C. The Dissent

As a final matter, a brief response to the dissenting opinion is in order. We note that our dissenting colleague does not challenge our application of well-established principles of finality or the conclusion that an administrative closing order does not constitute a final decision. Instead, the dissent's objection is to our construction of the District Court's August 19, 1999 order as an administrative closing order rather than a dismissal. This objection, however, is based solely on the proposition that the District Court's order was "ambiguously worded."[11] Relying on this supposed ambiguity, the dissent proposes that we use extrinsic evidence in order to conclude that the District Court and the parties actually understood the August 19th order to constitute a dismissal, and that, *ergo*, it was a dismissal.

We do not agree. The August 19th order is plain that the case be marked closed. This was predicated on the District Court's statement that it had been "advised by the parties of the full and final settlement" of the case and that "there

---

[11]The dissent does not explain whether its finding of ambiguity is premised upon an ambiguity on the face of the order or, alternatively, an ambiguity that is only apparent after considering extrinsic statements made by the District Court. As we describe below, however, we do not consider extrinsic evidence unless the order is ambiguous on its face.

[were] no further matters pending before the Court." As we have noted above, this factual predicate was certainly erroneous because the District Court had yet to receive and approve the final settlement papers from the parties. But nothing in the order mentions dismissal. With no patent ambiguity in the August 19th order, no need exists for parol or extrinsic evidence.

> The judicial process works best when orders mean what they say. Surprising interpretations of simple language – perhaps on the basis of a judicial intent not revealed in the words – unnecessarily create complex questions and can cause persons to forfeit their rights unintentionally. Parol evidence about the judge's intentions should be irrelevant, just as parol evidence is excluded in contract cases when the language is clear.

*Adams v. Lever Bros. Co.*, 874 F.2d 393, 395 (7th Cir. 1989); *see also Berke v. Bloch*, 242 F.3d 131, 136 (3d Cir. 2001) ("The judicial process works best when orders mean what they say. . . . Just as parol evidence is excluded in contracts cases when the plain language is clear, so too this type of [extrinsic] evidence about a party's intentions must be considered irrelevant to an unequivocal and final order." (citing *Adams*, 874 F.2d at 395)); *In re UNR Industries, Inc.*, 143 B.R. 506, 516 (Bankr. N.D. Ill. 1992) ("If an order is clear and unambiguous on its face, there is no need to look beyond the face of the order to determine its meaning."). Applying this rule of construction, we reject our dissenting colleague's proposition that we may look past the clear and unambiguous words used in the District Court's August 19th order for what the Court and the parties intended or understood the order to mean.

Reminiscent of the emperor's new clothes, the dissent has us, in effect, pretending to see something that does not exist. Per the dissent, we should simply pretend that Penn West's case was dismissed, even though (1) no language in the August 19th order mentioned a dismissal, (2) the District Court ignored the fact that it was not to act absent receiving and approving settlement papers from the parties, and (3) treating the case as dismissed might unknowingly subject Penn West to a refiling obligation that would trigger a statute of limitations defense. The upshot: the dissent finds that our decision is unfair to Penn West's adversaries; we find unfair the dissent's treatment of Penn West. Penn West should not be penalized when it was the District Judge who failed to terminate properly the case before him.

## V. Conclusion

The District Court misunderstood Penn West's May 10, 2002 motion as one for relief under Fed. R. Civ. P. 60(b). Rule

60(b) did not govern Penn West's motion because the District Court's August 19, 1999 order directing that Penn West's case be marked closed was not a final judgment or order. That order accomplished no more than an administrative closing of Penn West's case. Thus we vacate the District Court's November 5, 2002 order denying the motion to re-open and remand this matter for further consideration consistent with this opinion.

Penn West Associates v. Litman

No. 02-4344

ALITO, Circuit Judge, dissenting.

In my view, the District Court was correct in denying Penn West's Motion to List the Case for Trial and For Other Relief. The majority's holding – that this case has remained on the District Court's docket in a state of suspended animation for nearly five years – is unsound and may cause problems in other cases. I therefore respectfully dissent.

**I.**

The relevant facts are simple. After receiving notice that a settlement had been reached, the District Court waited a few days and then, on August 19, 1999, signed the order that is at issue here. The order noted that the Court had been informed by the parties "of the full and final settlement" of the case and that "there [were] no further matters pending before the Court." The Order then provided that "the Clerk of the Court mark the above captioned matter closed."

Unfortunately, the order did not state expressly that the case was dismissed, but it is clear that the Court and the parties viewed the order as one that ended the litigation in the District Court. Indeed, the majority notes that "the parties and the District Court appear to have operated under the assumption that the litigation was terminated." Maj. Op. at 3-4.

The District Court's understanding was confirmed a few months later when the settlement fell apart and the bankruptcy trustee for Penn West filed a motion asking the District Court to enforce the settlement. The District Court responded that the case was "settled and closed," that it was going to stay closed, and that the Trustee would have to file an independent action if it wished to claim that the settlement had been breached. Neither before nor after this ruling did any party complain that the Court was failing to open a case that had not been dismissed but had merely been administratively closed.

Several years later, after Penn West

16

emerged from bankruptcy and after the Bankruptcy Court had declared that no valid settlement agreement existed, Penn West filed in the District Court a Motion to List the Case for Trial and For Other Relief. The motion did not specify the legal authority on which it was based, but the District Court, consistent with its view that the case had been dismissed long ago, assumed that Penn West was moving for relief from a final judgment or order under Federal Rule of Civil Procedure 60(b). Concluding that the motion did not meet the standard for relief under that rule, the Court denied the motion, and Penn West took the present appeal.

On appeal, Penn West has not argued that the District Court erred in treating its motion as a Rule 60(b) motion for relief from a final judgment or order. Rather, Penn West's sole argument is that it is entitled to relief under Rule 60(b)(4) because the order at issue is void because it was based on the mistaken belief that the case had been settled.

At oral argument, counsel for Penn West insisted, even under questioning that invited him to change his position, that the August 19 order was a final order and that the issue before our Court is whether his client should have been granted relief from that order under Rule 60(b). The following exchange occurred:

> The Court: The effect of the order of Judge Bloch saying

the case was closed. *Isn't that tantamount to a dismissal of the complaint?*

*Counsel: It certainly is your honor. That's the reality of life, that's what it is . . . .*

Audio tape: Transcript of Oral Arguments in <u>Penn West v. Littman</u>, (Sep. 15, 2003) at 093 (emphasis added).

Under further questioning, counsel for Penn West held to this position:

> The Court: . . . [W]hat's the legal significance of the August 19, 1999 order of Judge Bloch ordering that the case be closed?
>
> Counsel: It closes the case.
>
> The Court: What's the legal significance of that?
>
> Counsel: *The case is over. The case is over.* What the case does. What the order does...
>
> The Court: *Are you sure you want to say. . . Is the case over or is it just an administrative closing?*

<u>Id</u>. at 111. Even after this suggestion that counsel might not "want to say" that the August 19 order signified that "[t]he case

17

[was] over," counsel for Penn West continued to maintain the position that the August 19 order was a final order from which relief should have been granted under Rule 60(b). <u>See</u> Audio tape: Transcript of Oral Arguments in <u>Penn West v. Littman</u>, (Sep. 15, 2003) at 163 ("I am appealing [the District Court's] *application of 60(b)(2)* because I suggest that my motion makes it pretty clear that there is a denial of due process."). <u>Id</u>. at 163 (emphasis added).

## II.

In my view, the District Court's order of August 19, 1999, was exactly what the Court and the parties understood it to be: an order dismissing the case. The fact that the order did not use the correct terminology is unfortunate but not dispositive. If the dismissal was without prejudice, <u>see</u> Fed. R. Civ. Proc. 41(a)(2), the order nevertheless removed the case from the District Court's docket, and Penn West could not restore the case to the docket simply by moving for such relief. Rather, Penn West would have to refile its complaint, assuming that its claims, which date from the late 1980s and early 1990s, were not time-barred.

Alternatively, if the dismissal eventually ripened into a dismissal with prejudice when Penn West stood pat, <u>cf. Berke v. Bloch</u>, 242 F.3d 131 (3d Cir. 2001)(conditional dismissal became

dismissal with prejudice when parties engaged in conduct "akin to standing on their complaint"), the order was final; Penn West's motion was properly categorized by the District Court as an order for relief under Fed. R. Civ. Proc. 60(b); and because Penn West cannot qualify for such relief, the order denying its Motion to List the Case for Trial and For Other Relief should be affirmed.

The majority, however, concludes, contrary to the understanding of the District Court and the parties, that the case was never dismissed but merely placed on hold – apparently indefinitely – and that therefore Penn West is entitled to revive the case, unless it is equitably barred from doing so. The majority cites nothing in the Federal Rules or in case law that supports this result, and I see no justification for the majority's approach. When a dispute arises as to whether an ambiguously worded order is in effect a dismissal, we should take a practical approach. If it appears that the order was intended to have the same effect as a dismissal and was understood by all concerned as having the same effect as a dismissal, the order should be treated as such.

An example of this approach is provided by <u>Delgrosso v. Spang and Co.</u>, 903 F.2d 234 (3d Cir. 1990). The order in that case stated:

IT IS HEREBY ORDERED

18

that the Clerk of Court mark the above caption case closed. Nothing in this order shall be considered a dismissal or disposition of this matter and, should further proceedings in it become necessary or desirable, either party may initiate it in the same manner as if this order had not been entered.

Id. at 236. We did not hold that this order was interlocutory simply because it did not state that the case was dismissed. Rather, we analyzed the practical effect of the order and observed:

> [T]he order in this case permits reinstatement and contemplates the possibility of future proceedings. The order does not purport to end litigation on the merits and the parties agree that it does not determine any issues or resolve the entire case. We recognize that the conduct of the district court raises the question whether the order effectively, if not expressly, brings the case to a close. On balance, however, we believe that the order is not final.

Id. Other courts of appeals have taken a similar tack. See, e.g., American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 707-08 (5th Cir. 2002), cert. denied, 537 U.S. 1106 (2003); Corion Corp. v. Chen, 964 F.2d 55, 56 (1st Cir. 1992).

The order involved here is nothing like the "administrative closing" orders that the majority discusses. As the majority notes, those orders typically state that the parties may restore the case to the docket if further action is required. See Maj. Op. at 10. See also Mercer v. Allegheny Ludlum Corp., 132 F.R.D. 38, 38-39 (W.D. Pa. 1990), aff'd, 931 F.2d 50 (3d Cir. 1991(describing order generally entered in the Western District of Pennsylvania to accomplish a mere "administrative closing"). The August 19, 1999, order in this case contained no similar language and, as noted, it recited that there were "no further matters pending before the Court."

The majority argues that the August 19 order was not a final order, but this argument does not support vacatur of the order denying the Motion to List the Case for Trial and For Other Relief. First, even if the August 19 order never ripened into a dismissal with prejudice and thus never became a final order, it would not follow that Penn West, years later, could restore the case to the District Court's active docket simply by moving to do so. Penn West would have to file a complaint. It did not do so, and therefore the denial of

19

its motion was correct.

Second, if the August 19 order eventually became a dismissal with prejudice, that order resolved all of the claims that Penn West asserted in its complaint and was thus final. Compare Maj. Op. 9 (stating that the this order was not final because it "did not resolve, or even purport to resolve, any of the claims that Penn West presented to the District Court"). Once Penn West's claims were dismissed with prejudice and Penn West failed to appeal, further assertion of those claims was barred, and Penn West was relegated to asserting claims under the settlement agreement.

The majority contends that the August 19 order was not final because "there was more for the District Court to do." Maj. Op. 9. The majority elaborates:

> [T]he parties had to continue their litigation in both the District Court and the Bankruptcy Court to determine: (1) whether they had indeed "settled" their case in July 1999, and (2)(a) if so, the terms of that settlement and whether to approve it, or (b) if not, how to achieve a resolution of their ongoing dispute.

Maj. Op. 9.

This argument confuses the question whether an order resolves all the claims that are before a court with the separate and (for present purposes) irrelevant question whether an order resolves all the issues that may arise between the parties in the future. Suppose that the August 19, 1999, order had stated expressly that all the claims in the case were dismissed with prejudice. There would then be no basis for disputing the finality of the order, but disagreements might nevertheless arise between the parties regarding the meaning or, indeed, the validity of the settlement agreement. The parties might then wish to return to the District Court to litigate those disagreements, but the parities' desire to resume litigation would not undermine the finality of the order of dismissal.

For these reasons, I believe that the majority's analysis is incorrect, that the District Court dismissed this case long ago, and that Penn West's motion to restore the case to the active docket was properly denied. The majority's decision is unfair to Penn West's adversaries, and I have some concern about the effect of this decision on other cases. The majority notes that there may be other "cases in our Circuit in which the last order docketed is an administrative closing order" and that "[it] is indeed possible that, as a consequence of our holding that the administrative closing order in our case has no legal significance beyond removing

the case from the District Court's docket, litigants will return to the courts to re-open their administratively closed cases." Maj. Op. 13-14. I see no justification for creating this danger.